# EXHIBIT 6

LAW OFFICES

# PARKOWSKI, GUERKE & SWAYZE
PROFESSIONAL ASSOCIATION
116 WEST WATER STREET
P.O. BOX 598
DOVER, DELAWARE 19903
302-678-3262
FAX: 302-678-9415

F. MICHAEL PARKOWSKI
I. BARRY GUERKE
DAVID S. SWAYZE
CLAY T. JESTER
JEREMY W. HOMER
JOHN C. ANDRADE
MARK F. DUNKLE
WILLIAM A. DENMAN
MICHAEL W. ARRINGTON
CHRISTINE P. SCHILTZ
MICHAEL W. TEICHMAN
BASIL C. KOLLIAS
ANNE HARTNETT REIGLE

GEORGE F. GARDNER, III
OF COUNSEL

WILMINGTON OFFICE
800 KING STREET, SUITE 203
WILMINGTON, DE 19801-0369
302-654-3300
FAX: 302-654-3033

September 26, 2005

Elizabeth K. Fite, Esquire
Law Office of Elizabeth Fite, P.A.
15316 North Florida Avenue, Suite 100
Tampa, Florida 33613

**VIA E-MAIL AND
FIRST CLASS MAIL**

David Israel, Esquire
Mayas D. Erickson Esquire
Sessions, Fishman & Nathan L.L.P.
201 St. Charles Avenue, 35th Floor
New Orleans, LA 70170-3500

**VIA E-MAIL AND
FIRST CLASS MAIL**

Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Richard, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

**VIA E-MAIL AND
FIRST CLASS MAIL**

RE:   Hue v. NCO / Defendant's Inadequate Discovery Responses

Dear David, Elizabeth and Jennifer:

This letter follows-up our phone conversations and correspondence regarding the plaintiff's discovery requests. My August 24, 2005, letter highlights some of the problems with the defendants' discovery responses. The letter indicates that the list of problems is not exhaustive. By this letter, I am providing the complete list of problems. As I indicated by phone, plaintiff intends to file a motion to compel (and seek attorney fees) if the discovery responses are not sufficient. Frankly, it appears to me that there has not been a good faith effort to supply the requested information, despite my several attempts to provide additional opportunities.

Elizabeth K. Fite, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 2

1.  Interrogatory No. 1 asks for the person or persons who made the decision to discharge Plaintiff. The answer identified Kathy Obenshain, "along with NCO Corporate Employee Relations." It is obviously insufficient to identify the persons by a general reference to "NCO Corporate Employee Relations."

Interrogatory No. 1 also requests the identity of any person who provided input regarding the decision to discharge plaintiff. The answer is not responsive, there being no indication of who provided input, except an identification of various individuals from whom NCO obtained statements. It is unclear from the answer whether those statements are the only input received that is related to the decision.

Interrogatory No. 1 also asks for the identity of any person who provided information that was considered by the defendant when it made its decision to discharge the plaintiff. Again the answer is unresponsive because it is unclear whether the list of people who gave written statements is an exhaustive listing of people who gave information.

2.  Interrogatory No. 2 asks for the identity of any document reviewed in connection with the decision to discharge plaintiff or utilized in making the decision. It also instructs that, for any drafts of documents reviewed, that an explanation be provided of why the draft document was not retained if that is the case. Plaintiff has knowledge that the statements referred in the answer to Interrogatory No. 1 were not in all cases the statements that were initially submitted to NCO management. Plaintiff is entitled to a copy of the initial drafts of the documents, or an explanation of what happened to them.

The response to Interrogatory No. 2 objects to the interrogatory as vague, compound, overly broad and burdensome. However, the objection is not valid. Plaintiff is entitled to know which documents were reviewed and which documents were utilized in making the decision. Although the answer to the interrogatory identifies some documents that were reviewed, it is unclear whether all the documents that were reviewed or utilized have been identified.

Finally, the answer to the interrogatory claims that "NCO has no ability to identify persons who may have read the draft documents." That obviously is not true. It would be an easy matter to ask the authors of the draft documents and the recipients of them who reviewed them.

3.  Interrogatory No. 3 asks for the identity of any document on which defendant relies to support its decision to discharge plaintiff. The answer refers to the answer to interrogatory 2 which is an objection based on vagueness, etc. The objection is improper. There is nothing vague or overly broad, etc. about the request. The answer to the interrogatory also

Elizabeth K. Fite, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 3

states that the documents responsive to the request "will be produced at a mutually agreeable time and place." Such response is obviously insufficient. Plaintiff is entitled to know what documents defendant relies upon to support the termination decision.

   4.   Interrogatory No. 4 requests information about "check handling procedures." The interrogatory refers to Exhibit A to the interrogatories, which provides NCO's written reason for discharging the plaintiff. The exhibit states plaintiff "...acted in an unprofessional manner by instructing NCO employees to violate NCO's check handling procedures." It is obvious that this allegation is a critical aspect of the case. Thus, interrogatory 4 seeks critical information regarding the case.

   First, interrogatory 4 asks for the identity of any document that contains the check handling procedures. Then it asks for the identity of any person who defendant claims was instructed by the plaintiff to violate such procedures, and any witness to such instruction. Third, it asks with respect to each person instructed to violate the procedure, an explanation of what the person was told in as much detail as known by the defendant and the approximate dates of the instruction. Finally, it asks for the identity of any document that evidences that such instruction was made. All these requests are directly related to the most critical issue in the case.

   NCO's response was to object to the interrogatory as being too vague, ambiguous, overly broad, and compound. The answer goes on to indicate "NCO will produce documents containing the relevant check handling policies and procedures at a mutually agreeable time and place." It goes on to say that the initial disclosures included statements from subordinates regarding instructions to violate the check handling policy and that the statements "are the best evidence of their contents."

   My August 24, 2005 letter explains in detail why the answer is insufficient. Elizabeth's September 8, 2005 letter responding to my August 24, 2005 letter simply states:

   "I again direct your attention to the documents attached as Exhibit A. These documents outline NCO's check handling policy, and were produced along with NCO and/or plaintiff's discovery responses. Because NCO produced documents contemporaneously with the written responses, I do not see the phrase, 'at a mutually agreeable time and place,' either violates the spirit of the discovery rules, or has in any way postponed the production of documents."

   Exhibit A to the letter includes a few documents, but they obviously do not provide a complete response to Interrogatory No. 4. Moreover, it is unclear from the answer or the letter whether NCO was supplied all the documents requested in the interrogatory. By objecting to the interrogatory and supplying some documents, NCO makes unclear whether all

Elizabeth K. Fite, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 4

the documents have been provided. Moreover, the attachments to Exhibit A cover a time period from December 26, 2001 to January 24, 2004. It is plaintiff's understanding that the check handling procedures changed over time, during that time period. Interrogatory No. 4 requests specifically what check handling procedures are referred to in the NCO explanation of why the plaintiff was discharged. It is impossible to tell from the interrogatory response which check handling procedure NCO claims was violated. Nor does the answer to the interrogatory supply the requested information regarding the identity of persons who defendant claims were instructed by plaintiff to violate the procedures, witnesses to the instruction, etc. In short, the answer to interrogatory 4 is totally inadequate and fails to give plaintiff vital information related to NCO's alleged reason for discharging plaintiff.

5. Interrogatory No. 5 seeks information about the "check handling procedures" to the extent they may not have been contained in any document. It asks for an explanation of the procedures, when they went into effect, and how defendant communicated the procedures to its employees, including the plaintiff. The answer is totally unresponsive because it simply refers to interrogatory 4. That problem was pointed out in my August 24, 2005 letter. Elizabeth's September 8, 2005 letter claims that my "concerns regarding Interrogatory No. 5 are likewise unfounded. NCO produced copies of the relevant check handling documents along with the discovery response." Defendant's duty is to answer the interrogatory. The answer to interrogatory 4 does not identify, as requested, the relevant check handling documents. In fact, I doubt whether NCO can do so. If, as NCO claims, plaintiff instructed NCO employees to violate a "check handling procedure," it would seem to be a simple matter to identify the procedure violated. By this letter, I am again requesting the identity of the policy which plaintiff instructed employees to violate. A general reference to "the relevant check handling documents" is insufficient. If NCO contends that the check handling procedures were contained in documents, the response to interrogatory 5 should be that it is not applicable because the procedures were in writing. If NCO contends the check handling procedures were not contained in a document, then the information required in Interrogatory No. 5 must be supplied.

6. Interrogatory No. 6 asks for an explanation of whether the check handling procedures which NCO claims plaintiff instructed employees to violate was in effect between January 1, 2000 and June 30, 2005. If not, the interrogatory asks for an explanation of the procedures that were in effect at different times and when they were in effect. The request is obviously important because plaintiff's instructions to NCO employees regarding the check handling procedures may have varied over time depending on what policy was in effect at a given time. The response to the interrogatory again objects on the basis of vagueness, etc. and claims the information is irrelevant. Then the answer states "NCO requires (and has always required) NCO employees and managers to abide by the check handling policies and procedures in effect at that time." Such information is useless and unresponsive. As my August 24, 2005 letter points out, the question "is <u>what</u> were the other policies." NCO's response is that the

Elizabeth K. Fite, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 5

employees were required to follow the other policies. Elizabeth's September 8, 2005 letter refers to documents included as Exhibit A to the letter. Plaintiff is entitled to know, by a sworn statement, which of those documents, if any, expresses the check handling procedure which NCO claims plaintiff instructed its employees to violate. If, for example, the policy was not to automatically re-deposit returned items from the bank (as per Phillip Weaver's February 24, 2003 e-mail, one of the Exhibit A documents), the interrogatory responses should so indicate in the answer to interrogatory 4.

7. Interrogatory No. 7 asks whether the "check handling procedures" referenced in the Exhibit A to the interrogatories (NCO's written documentation for the termination) were the same "check handling procedures" referenced in the letter to the Delaware Department of Labor (Exhibit B to the interrogatories). The answer is totally unresponsive. Plaintiff is entitled to know whether the reasons in Exhibit A and Exhibit B are the same or are different.

8. Interrogatory No. 8 requests an explanation of the facts to support the statement that plaintiff "fraudulently violated NCO's check handling procedures." The response simply states that plaintiff violated the check handling procedures by improperly re-depositing non-sufficient funds checks without debtor and/or bank authorization and/or instruction subordinates to do the same. Although the response provides general information, it does not provide the specific facts. Inasmuch as the interrogatories also fail to supply the information requested in interrogatory 4, the interrogatory answers give plaintiff no understanding of what facts NCO relies upon to justify the termination of employment.

9. Interrogatory No. 10 requests information about the bonuses given to plaintiff. NCO's theory evidently is that plaintiff manipulated the return of checks to the banks to enable her to obtain a higher bonus. Defendant's response states "NCO will produce copies of documents containing the relevant bonus information regarding plaintiff at a mutually agreeable time and place." It is obviously impermissible to defer the answer to some future time, which is dependent upon NCO's agreeing to it.

10. Interrogatory No. 11 asks for information related to NCO's claim that plaintiff knew that checks would not clear bank accounts. Specifically it asks for the identity of persons who have knowledge of any fact that supports the claim, any document that supports the claim and the specific check which plaintiff allegedly knew would not clear. NCO's answer simply states that plaintiff knew or should have known that the checks would not clear the accounts. It does not provide the names of persons who knew, the documents that support the assertion, etc. My August 24, 2005, letter states:

> "If NCO has any factual information which supports the allegation that plaintiff knew there were insufficient funds to cover a certain check, the facts must be

Elizabeth K. Fite, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 6

supplied pursuant to the request. If it does not, it should admit such fact. It is insufficient merely to state plaintiff generally knew something if defendant has more specific information about what she knew, who was aware of it, what specific checks were re-deposited, etc."

Elizabeth's September 8, 2005 letter includes this statement: "This is not a situation where plaintiff knew for certain that the re-submitted NSF checks would bounce for a second (or third) time." Plaintiff is entitled to have that statement made as a sworn statement in response to the interrogatory. It obviously refutes the allegation that plaintiff knew a check would bounce. The interrogatories answers must be amended, and sworn to.

11.    Interrogatory No. 12 asks for the identity of any individual employed by defendant between January 1, 2000 and June 30, 2005 who held a position equivalent to the position held by plaintiff, and also the identity of their race and gender. The answer simply states that the plaintiff was the only African American and female individual in her job position when she was terminated. My August 24, 2005 letter points out that the question concerns the time period January 1, 2000 to June 30, 2005, and therefore the answer is unresponsive. Elizabeth's September 8, 2005 letter includes an Exhibit B which the letter claims covers the question from the period June 1, 2000 to June 30, 2005. However, the exhibit provided contains the title "general manager titles 2002-2004." NCO needs to correct the exhibit to provide the right dates. It also needs to include a sworn statement that the exhibit reflects the information sought in the interrogatory.

12.    Interrogatory No. 13 requests the identity of the top ten debt collectors in terms of total money collected in each year for calendar years 2002-2004 in four of NCO's offices. Plaintiff is entitled to the information because it is calculated to lead to relevant information. Plaintiff would like to depose some of those collectors to determine what practices were followed regarding check handling procedures in the offices. Obviously, if the practices followed in other offices (and in the Dover office) by the debt collectors were ones which NCO claims violated the check handling polices, NCO's justification for terminating the plaintiff is bogus.

NCO's response to the interrogatory is that it is vague, ambiguous, overly broad, burdensome, seeking irrelevant information, and harassing in nature. Then NCO claims it has no ability to identify the top ten debt collectors in those four offices because it does not keep national records containing such statistics. It does not matter whether national records are contained, NCO certainly has the ability to determine who the top ten collectors in the four offices were. It is not credible that NCO is incapable of ascertaining the identity of those collectors.

Elizabeth K. Fite, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 7

13. Interrogatory No. 14 asks for an explanation of a cash journal ledger and the code number used in the ledger to indicate that a payment has been re-dipped. The answer does not provide the code number, which plaintiff needs to review the cash ledgers that are relevant to the case, and to determine how many checks have been re-dipped. Incidentally, Elizabeth's September 8, 2005 letter claims that plaintiff's instructions to her subordinates "permitted Ms. Hue to have inflated revenue and collection numbers for the month-end when this [re-dipping] was done." As stated above, plaintiff is entitled to the information regarding bonuses.

14. Interrogatory No. 15 asks for an explanation of each of the facts which support the affirmative defenses, the identity of individuals who have knowledge of the facts, and the identity of any document which supports the defenses. The answer claims the interrogatory is "vague, ambiguous, and compound." Then it states the defenses are largely based upon two general alleged propositions, namely that there wasn't any discrimination and plaintiff caused her own termination by violating the check handling procedures. The response is totally unresponsive. My August 24, 2005 letter so notes, and Elizabeth's September 8, 2005 letter provides additional general information in one paragraph that fails to explain the specific facts, identify the witnesses, or identify the documents. The answer is obviously insufficient. If defendant wishes to raise the affirmative defenses, it must provide the facts related to it and the other information requested in the interrogatory.

15. Interrogatory No. 16 asks for the identity of any individual who has knowledge of facts relevant to any disputed fact in the case and an explanation if those facts. The answer is not responsive.

16. Interrogatory No. 18 asks for the identity of the person or persons who made the decision to discharge Bill Savage and the identity of persons who provided input regarding the decision, including anyone who provided information considered by the defendant. The answer fails to identify the persons as requests, simply stating that it was made by "NCO human resources, and NCO managers, including but not limited to Ted Fox." Then it states the decision was based on input and observations of "NCO employees" which included Rick Boudreau and Eric Shaw." However, the answer indicates that the input and observations were from other employees as well, and they are not identified. The answer obviously is not responsive.

The production requests.

My August 24, 2005, letter points out that the answers to the requests for productions of documents are largely insufficient. The problems begin with the first request for production of documents which asks for the cash journal ledgers, hold check request forms, U-deposit forms and post-date check reports, and NSF reports prepared in the Dover office between July 1, 2003

Elizabeth K. File, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 8

and 2004. The response claims no ability to produce the documents, and then states "NCO will produce relevant check handling policies at a mutually agreeable time and place."

Likewise, a similar answer is provided to Request No. 2, No. 3, No. 4, No. 5, No. 6, No. 7, No. 8. All of the responses are inadequate and violate the obligations set forth in the discovery rules.

The responses to Requests Nos. 9-13 are insufficient and avoid providing relevant documents related to an employee who claims (evidently) that plaintiff instructed him to violate a policy. In fact, the plaintiff fired him for violating a policy. In any event, the documents requested are relevant and must be provided.

Likewise, the responses refuse to provide all the documents related to the termination of Bill Savage, the individual who sexually and racially harassed plaintiff. The refusal to supply the documents violates the discovery rules. Production Request No. 15 asks for other charges of discrimination filed against NCO, and the answer refuses to supply them. It is obvious that such documents could lead to relevant information, and the refusal to supply them violates the discovery rules.

Production Request No. 16 asks for the documents identified in the interrogatories. The failure to identify the documents as required in the interrogatories is noted above.

Production Request No. 18 asks for 2004 year financial statements, the answer is non-responsive.

Production Request No. 19 asks for the documents that contain the policy procedure that pertains to re-depositing checks or authorization of re-depositing checks. The answer simply claims the policies will be produced at a mutually agreeable time and place.

Request No. 20 asks for the policy utilized between January 1, 2000 and June 30, 2005 that varies in any respect from the check handling procedures referenced in Exhibit A to the interrogatories. The answer claims that NCO does not possess documents responsive to this request. However, if I understand Elizabeth's September 8, 2005 letter, NCO claims that the documents attached as Exhibit A are responsive (although it is unclear whether all the responsive documents have been supplied because NCO objected to the interrogatory). The inconsistency should be corrected.

Request No. 22 requests any document that reflects the date(s) upon which any policy or procedure produced in response to request 19 (related to the re-depositing of check or authorization for the re-depositing of checks) stopped being effective. The answer claims the

Elizabeth K. Fite, Esquire
David Israel, Esquire
Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Page 9

request is vague and ambiguous. The request is not vague or ambiguous and the information sought is directly related to the issue of whether plaintiff improperly instructed employees to violate the check handling procedures.

As indicated above, if the above problems are not addressed adequately, plaintiff intends to file a motion to compel answers and will seek attorney fees for all the time involved in addressing the problem.

Yours truly,

JEREMY W. HOMER

JWHsar
e:mail: JHomer@pgslegal.com
cc:   Valerie Hue
H:\Hue\Attys10

# Jeremy W. Homer

| | |
|---|---|
| From: | "Jeremy W. Homer" <jhomer@pgslegal.com> |
| To: | "Elizabeth K. Fite, Esq." <elizabeth.fite@fitelaw.com>; <di@sessions-law.com>; <jauffret@rlf.com>; "Schwartz, Alyssa M." <Schwartz@RLF.com> |
| Sent: | Monday, September 26, 2005 10:26 AM |
| Attach: | Attys10.pdf |
| Subject: | HUE v. NCO |

Please see the attached.


JEREMY W. HOMER, ESQUIRE
PARKOWSKI, GUERKE & SWAYZE, P.A.
116 West Water Street
P.O. Box 598
Dover, DE  19903
Phone: (302) 678-3262
Fax: (302) 678-9415
E-Mail: JHomer@pgslegal.com

****************************************************************************
IRS CIRCULAR 230 DISCLOSURE:  IRS regulations require us to notify you that this communication was not intended or written to be used, and cannot be used, by you as the taxpayer, for the purpose of (1) avoiding penalties that the IRS might impose on you or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.
****************************************************************************
This electronic mail may contain information that is privileged, confidential, and or otherwise protected from disclosure to anyone other than its intended recipient(s).  Any dissemination or use of this electronic email or its contents by persons other than intended recipient(s) is strictly prohibited.  If you have received this message in error, please notify us immediately by reply e-mail so that we may correct our internal records.  Please then delete the original message.  Thank you.
****************************************************************************