# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VALERIE HUE, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 05-225-KAJ |
| | : | |
| v. | : | |
| | : | |
| NCO FINANCIAL SYSTEMS, INC., a | : | |
| Delaware corporation, trading as | : | |
| NCO FINANCIAL COMMERCIAL | : | |
| SERVICES, | : | |
| | | |
| Defendant. | | |

### NCO FINANCIAL SYSTEMS, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT

Defendant, NCO Financial Systems, Inc. ("NCO"), by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 26 and 33, hereby responds to plaintiff's discovery requests by providing the following original and supplemental responses as follows:

### DEFINITIONS AND INSTRUCTIONS

NCO objects to plaintiff's definitions to the extent that plaintiff's definitions exceed the requirements imposed by law.

### INTERROGATORIES

INTERROGATORY NO. 1: Identify (as defined above) the person or persons who made the decision to discharge Plaintiff and identify each person who provided input regarding it, including but not limited to anyone who provided information considered by Defendant.

RESPONSE: NCO objects to this interrogatory as vague and compound. Notwithstanding such objections, Kathy Obenshain, along with NCO Corporate Employee Relations conducted the

RLF1-2934119-1

fact-finding investigation and made the decision to terminate plaintiff's employment. As part of the investigation, NCO obtained statements from NCO employees, including but not limited to the following: Mathew Lane, Jim Sprader, Kimberly Marlow, Eric Shaw, Dave McQuisten, Brad Reavis, Brian Laiche, Darrin Deesch, Lenny Ciccarone, Manny Cardozo, Joe Batie, Mike Scher, and Joe Thomas. Contact information for the above-listed people was provided as part of NCO's initial disclosures to plaintiff. NCO reserves the right to supplement or amend this response as its investigation continues.

SUPPLEMENTAL RESPONSE: NCO objects to this interrogatory as vague and compound. Notwithstanding such objections, Kathy Obenshain, along with NCO Corporate Employee Relations, including Cherie Sugg and Carol Murray, conducted the fact-finding investigation and made the decision to terminate plaintiff's employment. As part of the investigation, NCO obtained statements from NCO employees, including but not limited to the following: Mathew Lane, Jim Sprader, Kimberly Marlow, Eric Shaw, Dave McQuisten, Brad Reavis, Brian Laiche, Darrin Deesch, Lenny Ciccarone, Manny Cardozo, Joe Batie, Mike Scher, and Joe Thomas. Contact information for the above-listed people was provided as part of NCO's initial disclosures to plaintiff. NCO reserves the right to supplement or amend this response as its investigation continues.

INTERROGATORY NO. 2: Identify (as defined above) any and all documents (as defined above) reviewed in connection with the decision to discharge Plaintiff, or utilized in making such decision. If any draft of any such document cannot be produced because it has not been retained, explain who directed that the document not be retained and the date or approximate date that such direction was made. Also, for any such draft document, identify any person who read the draft document.

RESPONSE: NCO objects to this interrogatory as vague, compound, overly broad, and burdensome. NCO has no ability to identify persons who have "read the draft document," which may or may not exist. Notwithstanding such objections, NCO reviewed plaintiff's personnel file, JDS (disciplinary) file, the statements of the persons listed in response to interrogatory 1, the documents utilized in the termination of Mathew Lane, and NCO's records indicating that plaintiff participated in, directed, and/or instructed NCO employees to re-generate checks returned for insufficient funds without following NCO procedure.

SUPPLEMENTAL RESPONSE: NCO objects to this interrogatory as vague, compound, overly broad, and burdensome. NCO has no ability to identify persons who have "read the draft document," which may or may not exist. Notwithstanding such objections, NCO reviewed plaintiff's personnel file, JDS (disciplinary) file, the statements of the persons listed in response to interrogatory 1, the documents utilized in the termination of Mathew Lane, and NCO's records indicating that plaintiff participated in, directed, and/or instructed NCO employees to re-generate checks returned for insufficient funds without following NCO procedure. NCO has already produced correspondence and documents reviewed in relation to plaintiff's termination.

INTERROGATORY NO. 3: Identify (as defined above) any and all documents on which Defendant presently relies to support the decision to discharge Plaintiff.

RESPONSE: See response to interrogatory 2 above. The documents responsive to this request that have not been sent to counsel for plaintiff as part of NCO's initial disclosures will be produced at a mutually agreeable time and place.

SUPPLEMENTAL RESPONSE: As stated in interrogatory 2 above, NCO reviewed plaintiff's personnel file, JDS (disciplinary) file, the statements of the persons listed in response to interrogatory 1, the documents utilized in the termination of Mathew Lane, and NCO's records

3

indicating that plaintiff participated in, directed, and/or instructed NCO employees to re-generate checks returned for insufficient funds without following NCO procedure. These documents, records, and/or correspondence have already been produced.

INTERROGATORY NO. 4: With respect to the "check handling procedures" referenced in Exhibit A, attached hereto:

    (a)    identify any document that contains any or all such procedures;

    (b)    identify any person who defendant claims was instructed by Plaintiff to violate such procedures and any witness to such instruction;

    (c)    with respect to each person instructed to violate such procedure, explain what the person was told in as much detail as known by Defendant and the approximate date(s) of such instruction;

    (d)    identify any document that evidences that such instruction was made, including, without limitation, any tape recording or any written account of the instruction.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, overly broad, and compound. Notwithstanding such objections, NCO will produce documents containing the relevant check handling policies and procedures at a mutually agreeable time and place. Furthermore, NCO has produced documents as part of its initial disclosures demonstrating that plaintiff instructed her subordinates to violate NCO's check handling policy. The statements of said persons are the best evidence of their contents.

SUPPLEMENTAL RESPONSE: NCO objects to this interrogatory as vague, ambiguous, overly broad, and compound. Notwithstanding such objections, NCO has produced documents containing the relevant check handling policies and procedures. Furthermore, NCO has

4

produced documents as part of its initial disclosures demonstrating that plaintiff instructed her subordinates to violate NCO's check handling policy.

INTERROGATORY NO. 5: If the "check handling procedures" referenced in Exhibit A hereto are not contained in any document, explain the procedures, when they went into effect, and how Defendant communicated the procedures to its employees, including the Plaintiff.

RESPONSE:  Please see response to interrogatory 4 above.

SUPPLEMENTAL RESPONSE:   NCO produced copies of the relevant check handling documents along with the discovery responses.

INTERROGATORY NO. 6: If Defendant has not required its employees to follow the "check handling procedures" referenced in Exhibit A at all times between January 1, 2000, and June 30, 2005, explain what other procedures employees were required to follow regarding the subject matter of the "check handling procedures," and when those other procedures were in effect.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, and seeking irrelevant information.  NCO cannot respond to this interrogatory as worded.  Notwithstanding such objections, and based upon NCO's interpretation of this interrogatory, NCO requires (and has always required) NCO employees and managers to abide by the check handling policies and procedures in effect at that time.

SUPPLEMENTAL RESPONSE:   NCO has produced documents that explain how the check handling policy evolved between 2001 and 2005.  As stated in the documents, on December 26, 2001, Peter Buggelin sent a memorandum to all collection personnel indicating that "[m]anipulations of the timing of recoveries for any reason is strictly prohibited . . . breeches[sic] of our fundamental responsibility . . . will result in either a final warning or termination of employment depending upon the circumstances." On February 23, 2003, Phil Weaver clearly

articulated the check handling policy by stating in an e-mail to Commercial Ops Managers: "Effective immediately, the automatic re-deposit of returned items from the bank will cease." On March 4, 2003, the new process for re-depositing checks was detailed, and states in relevant part: "Requests can only be made on items that have been returned only once . . . [a]ccounting clerk will have[sic] do a final verification and only items meeting the above criteria will be posted and redeposited." Additionally, on August 7, 2003, Mike Scher reiterated that the practice of "manipulating" the check-by-phone process would not be tolerated because it "opens us up to huge liability issues and we cannot have that." In Ms. Hue's e-mail to Mr. Leckerman, dated January 22, 2004, she argues that "[w]e had a policy under Phil Weaver that all checks were re-dipped two times automatically. When that policy went away it was mgt discretion on re-dipping checks." Mr. Weaver's February 23, 2003 e-mail to managers stating that the "automatic de-posit[sic] of returned items from the bank will cease," clearly negates Ms. Hue's argument.

INTERROGATORY NO. 7: With respect to the "check handling procedures" referenced in the next to the last paragraph of page 2 of Exhibit B, attached hereto, are such procedures the same ones referenced in Exhibit A? If not, please provide the information requested in Interrogatories 4-6, but substituting "Exhibit B" for "Exhibit A" for Interrogatories 4-6.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, and compound. NCO cannot respond to this interrogatory as worded. Notwithstanding such objections, and based upon NCO's interpretation of this interrogatory, on August 2, 2002, Kathy Obenshain informed all General Collection Managers that collectors would be allowed to use a "direct check" form to obtain payments over the telephone from debtors. The debtors could authorize the transaction by telephone instead of fax as stated within Exhibit 1B to NCO's position statement, said document

being the best evidence of its contents. On January 21, 2004, upon learning that plaintiff was violating/abusing this process and directing her subordinates to violate/abuse the process, Kathy Obenshain sent a memorandum to all NCO employees stating that the company was returning to the pre-August 2, 2002 policy of obtaining debtor authorization by fax as explained in Exhibit 1A to NCO's position statement, said document being the best evidence of its contents. NCO's position statement and attached Exhibits will be produced at a mutually agreeable time and place.

SUPPLEMENTAL RESPONSE: NCO's position statement and attached Exhibits have already been produced.

INTERROGATORY NO. 8: Explain the facts that support the statement that Plaintiff "fraudulently violated NCO's check handling procedures," as alleged in Exhibit B, page 2, next to the last paragraph.

RESPONSE: An investigation revealed that plaintiff was violating NCO's check handling policies by improperly re-depositing non-sufficient funds (NSF) checks without debtor and/or bank authorization, and/or instructing subordinates to do the same. The improper re-depositing without debtor and/or bank authorization was assumedly to create additional fees at the end of the month, which would in turn increase plaintiff's commission and/or bonus.

SUPPLEMENTAL RESPONSE: NCO has produced documents demonstrating that plaintiff was violating NCO's check handling policy.

INTERROGATORY NO. 9: For what month and year was the "routine monthly audit" referenced in the last paragraph of page 2 of Exhibit B undertaken?

RESPONSE: On or between December 2003 and January 2004 a routine monthly audit occurred, and a large number of NSF checks were found in plaintiff's office. A fact-finding

7

investigation by Kathy Obenshain was completed, which revealed that the large number of NSF checks were due to plaintiff and/or her subordinates re-depositing NSF checks without debtor authorization or bank verification that funds were available.

SUPPLEMENTAL RESPONSE:   No further response is required.

INTERROGATORY NO. 10:   For each month from January 2003 through January 2004, provide the amount of the bonus awarded to or earned by Plaintiff and identify any document that evidences such bonus. For purposes of this question, "bonus" refers to the bonus paid by Defendant which depended on the Plaintiff's performance, as explained in Exhibit B.

RESPONSE: NCO will produce copies of documents containing the relevant bonus information regarding plaintiff at a mutually agreeable time and place.

SUPPLEMENTAL RESPONSE:   NCO has produced copies of documents containing information regarding plaintiff's bonuses.

INTERROGATORY NO. 11:   With respect to the assertion that "charging party was aware that these checks would not clear the respective bank accounts," contained in Exhibit B, page 3:

   (a)   identify any person who has knowledge of any fact that supports the assertion and explain what knowledge he/she has;

   (b)   identify any document that supports the assertion, including, without limitation, each of the checks referenced in the assertion;

   (c)   explain, with respect to each check referenced in the assertion, the facts which support Defendant's claim that Plaintiff knew the check would not clear the account.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, and compound. Notwithstanding such objections, plaintiff knew or should have known that the checks would not

8

clear the debtors' accounts because she was re-depositing and/or directing her subordinates to re-deposit NSF checks without debtor authorization and/or verification from the bank that funds were available.

SUPPLEMENTAL RESPONSE:    Plaintiff re-submitted or directed her subordinates to re-submit NSF checks without debtor authorization and without attempting to obtain verification from the debtor's bank that the funds were available. This is not a situation where plaintiff knew for certain that the re-submitted NSF checks would bounce for a second time (or third) time. Plaintiff re-submitted (or directed her subordinates to re-submit) NSF checks without following the check handling procedure, which resulted in a higher number of NSF checks bouncing for a second (or third) time. Once the check was re-submitted, NCO recognized any related commission as income. Plaintiff's practice would artificially inflate income if the check was returned NSF, until the following month when the check would be "backed-off." There were times that improperly submitted checks would clear – but again- plaintiff still violated her obligations to ensure that NCO's policies were followed. NCO will supplement this response as necessary as discovery and investigation continue.

INTERROGATORY NO. 12:    Provide the name, address, phone number, name of employer, race and gender of all individuals employed by Defendant during any time between January 1, 2000 and June 30, 2005, who held a position equivalent to the position held by Plaintiff when Defendant discharged her.

RESPONSE: NCO objects to this request as vague, ambiguous, overly broad, and seeking irrelevant information. Notwithstanding such objections, plaintiff correctly asserts in her Complaint that at the time of her termination plaintiff was the only African American and female individual in her job position.

SUPPLEMENTAL RESPONSE: NCO has produced a chart demonstrating the race and gender of other individuals employed by NCO in plaintiff's same job position.

INTERROGATORY NO. 13: Identify (as defined above) the top ten debt collectors in terms of total money collected in each year for calendar year 2002, 2003, and 2004, in each of the Defendant's following offices: Dover, Delaware; Louisiana; Atlanta, Georgia; San Diego, California; and Chicago, Illinois.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, overly broad, burdensome, seeking irrelevant information, and harassing in nature. Notwithstanding such objections, NCO has no ability to identify "the top ten debt collectors in terms of total money collected in each year for calendar year 2002, 2003, and 2004, in each of the Defendant's following offices: Dover, Delaware; Louisiana; Atlanta; Georgia, San Diego, California, and Chicago, Illinois" because NCO does not keep national records containing such statistics.

SUPPLEMENTAL RESPONSE: The information sought is irrelevant to plaintiff's claims and is not likely to lead to the discovery of relevant evidence.

INTERROGATORY NO. 14: Explain (as defined above) the use of the cash journal ledger, and state the code number used in the ledger to indicate that a payment has been "re-dipped" (i.e., redeposited after being returned for insufficient funds).

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, and compound. NCO cannot respond to this interrogatory as worded. Notwithstanding such objections, and based upon NCO's interpretation of this interrogatory, re-dipping is when a NSF check is re-submitted with proper debtor authorization and bank validation that the funds are available. Re-generating is when a NSF check is re-submitted to the bank as if it was never submitted before. Re-generating a check violates NCO procedure because it bypasses the requirements that collectors

receive debtor authorization to re-submit the NSF check and bank validation that funds are available in the debtor's account.

SUPPLEMENTAL RESPONSE:   No further response is necessary.

INTERROGATORY NO. 15:   For each affirmative defense set out in the answer to the complaint, explain each of the facts which support the defense, identify who has knowledge of such facts, and identify any document which supports the defense.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, and compound. Notwithstanding such objections, NCO's affirmative defenses are largely based upon the facts that (1) NCO did not discriminate or retaliate against plaintiff on the basis of her race or any other protected characteristic, and (2) plaintiff caused her own termination by violating NCO's check handling procedures and/or directing her subordinates to do the same.

SUPPLEMENTAL RESPONSE:   NCO's first affirmative defense is based on NCO's belief that plaintiff has not attempted to find work with comparable pay. NCO will supplement this answer as discovery continues. NCO's second, sixth, and eighth affirmative defenses are based upon the fact that NCO terminated plaintiff's employment because plaintiff violated company policy and instructed her subordinates to violate company policy, which are legitimate business reasons. NCO's third, fourth, fifth and tenth affirmative defenses are based upon the fact that plaintiff caused her own termination by violating company policy and instructing her subordinates to violate company policy. NCO's seventh and ninth affirmative defenses are based upon the fact that any complaints by plaintiff of sex and/or race discrimination were rapidly investigated and resolved by such measures as the termination of Bill Savage. NCO's eleventh affirmative defense is based upon the fact that plaintiff files this action against NCO with knowledge that the facts and law do not support her claims, and that NCO has not violated state

or federal laws with respect to her employment. NCO's twelfth affirmative defense is based upon the fact that some of the same NCO managers/employees who participated in promoting plaintiff to a manager's position were also instrumental in terminating plaintiff's employment. Please see the statements of NCO managers, including Kathy Obenshain, produced as part of NCO's initial disclosures.

INTERROGATORY NO. 16:    Identify (as defined above) any individual who has or may have knowledge of facts relevant to any disputed fact in the case and explain (as defined above) those facts.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, and overly broad. NCO cannot respond to this interrogatory as worded.

SUPPLEMENTAL RESPONSE:    NCO objects to this interrogatory as vague, ambiguous, and overly broad. NCO cannot respond to this interrogatory as worded. Notwithstanding such objections, and based upon NCO's interpretation of interrogatory no. 16, Kathy Obenshain, along with NCO Corporate Employee Relations, including Cherie Sugg and Carol Murray, have knowledge of plaintiff's violation(s) of NCO policy because they conducted the fact-finding investigation and made the decision to terminate plaintiff's employment. Additionally, Mathew Lane, Jim Sprader, Kimberly Marlow, Eric Shaw, Dave McQuisten, Brad Reavis, Brian Laiche, Darrin Deesch, Lenny Ciccarone, Manny Cardozo, Joe Batie, Mike Scher, and Joe Thomas have knowledge of plaintiff's claims, NCO's defenses, and plaintiff's violation(s) of company policy.

INTERROGATORY NO. 17:    Identify (as defined above) any individual the Defendant plans to call or may call as a witness in the trial of this case.

RESPONSE: NCO objects to this interrogatory as premature. NCO has not determined who it will call as a witness in the trial of this case. NCO reserves the right to supplement this response as discovery and investigation continue.

SUPPLEMENTAL RESPONSE:    No further response is necessary.

INTERROGATORY NO. 18:    Identify the person or persons who made the decision to discharge Bill Savage and identify the person who provided input regarding such decision, including but not limited to anyone who provided any information considered by Defendant.

RESPONSE: NCO objects to this interrogatory as vague, ambiguous, compound, and overly broad. Notwithstanding such objections, Mr. Savage was terminated from employment on October 11, 2001 as a result of offensive language and/or behavior as outlined in the termination document attached as Exhibit 9 to NCO's position statement, said document being the best evidence of its contents. The decision to terminate Mr. Savage was made by NCO Human Resources, and NCO managers, including but not limited to, Ted Fox. The decision was based upon the input and observations of NCO employees, including but not limited to, plaintiff, Ric Boudreau, and Eric Shaw.

SUPPLEMENTAL RESPONSE:    No further response is necessary.

As to Objections:

Of Counsel:
David Israel
Sessions, Fishman & Nathan, L.L.P.
201 St. Charles Ave., Suite 3500
New Orleans, Louisiana 70170-350

Elizabeth K. Fite
Law Office of Elizabeth Fite, P.A.
15316 N. Florida Avenue, Suite 100
Tampa, Florida 33613

Dated: October 14, 2005

Jennifer C. Jauffret (#3689)
jauffret@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19899
Telephone (302) 651-7700

13

RLF1-2934119-1

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2005, true and correct copies of the foregoing were caused to be served on counsel of record at the following address as indicated:

### BY FEDERAL EXPRESS

Jeremy W. Homer, Esq.
Parkowski, Guerke & Swayze, P.A.
116 West Water Street, P.O. Box 598
Dover, DE 19903

_____
Alyssa M. Schwartz (#4351)