IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VALERIE HUE, | ) |
| | ) |
| Plaintiff, | )  C.A. No. 05-225-KAJ |
| | ) |
| v. | ) |
| | ) |
| NCO FINANCIAL SYSTEMS, INC., a | ) |
| Delaware corporation, trading as NCO | ) |
| FINANCIAL COMMERCIAL SERVICES, | ) |
| | ) |
| Defendant. | ) |

**NCO'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL ANSWERS
TO DISCOVERY AND FOR THE IMPOSITION OF SANCTIONS**

Defendant NCO Financial Systems, Inc. ("NCO"), by and through its undersigned counsel, responds to plaintiff's Motion to Compel Answers to Discovery and for the Imposition of Sanctions (the "Motion") as follows:[1]

1.   This lawsuit was filed on April 15, 2005. In summary, plaintiff alleges that NCO discriminated against her based upon her sex and race and retaliated against her for complaining of sexual harassment years prior to her termination. NCO denies all liability.

2.   Plaintiff served her first set of discovery on July 19, 2005. Defendant answered plaintiff's discovery on August 19, 2005. Since those answers were served upon plaintiff, counsel for plaintiff and counsel for NCO have had numerous discussions, letters, and emails where defense counsel has attempted to address plaintiff's unfounded concerns. Formal supplemental responses were sent to plaintiff's counsel on October 14, 2005. The dispute continues.

---

[1] Pursuant to the parties' Scheduling Order, NCO understands the Court's preference for letters to resolve discovery disputes. However, NCO has responded to plaintiff's Motion in the form of a motion to be consistent with plaintiff's filing.

RLF1-2942500-1

3.  On October 31, 2005, plaintiff filed her Motion seeking supplemental discovery responses and sanctions for NCO's alleged failure to provide sufficient documents and/or responses to her discovery requests. *See* (D.I. 30). Specifically, plaintiff alleges that NCO has failed to:

- "identify the check handling policies which plaintiff allegedly told employees to violate;"

- produce "document(s) that contains [sic] the policy;" and

- state "the identity of any person who defendant claims was instructed by plaintiff to violate the policy, what the person was told, the date of the instruction, and the identity of any document that evidences that such instruction was made."

Id. at ¶ 11.

4.  Plaintiff's Motion asserts that NCO has failed to produce all "cash journal ledgers, hold check request forms, U-Deposit forms, post date check reports, and NSF reports prepared in the defendant's Dover office between July 1, 2003 and March 2004." Id. at ¶ 16. Plaintiff alleges that this information is relevant because the documents "would enable plaintiff to determine whether and to what extent various employees complied with policies relevant to the case." Id.

5.  Plaintiff's Motion on this issue is unsupported. Plaintiff's hollow assertions that NCO has not supplied "plaintiff with the check handling policies which plaintiff allegedly told employees to violate" is negated by plaintiff's own exhibits attached to the Motion. For example, the following policies are stated in Exhibit 5[2] to plaintiff's Motion:

---

[2] Exhibit 5 to plaintiff's Motion is a letter dated September 8, 2005 from counsel for NCO to counsel for plaintiff addressing concerns with NCO's discovery responses. As pointed out in the letter, the documents attached to the letter were extracted from plaintiff's document production

2

RLF1-2942500-1

- "Producer practices that delay revenue, including the practice known as 'sandbagging,' as well as practices that may seek to recognize revenue before an actual recovery occurs, are breaches of our fundamental responsibility and will result in either a final warning or termination of employment depending on the circumstances." *See* (Exhibit 5, Memorandum from Peter Buggein to All Collection Personnel regarding "Statement of Policy").

- **"Effective immediately, the automatic re-deposit of returned items from the bank will cease. This will prevent items being returned after client remittance has been issued."** *See* (Exhibit 5, E-mail from Phil Weaver to Commercial Operations Managers dated February 24, 2003).

- "The following outlines the policy for re-deposit of NSF checks. Read carefully and adhere accordingly! [Followed by detailed procedure for the redeposit of checks that were returned to NCO for insufficient funds.]" *See* (Exhibit 5, E-mail from Phil Weaver to Commercial Operations Managers dated March 5, 2003).

- "I hate to discuss an issue that shouldn't need to be addressed but I have absolutely no choice. This is regarding check faxes, check by phones etc. . . . I will refer you all to the memo that Kathy Obenshain put out 1 year ago, and again in March 2003 which you all signed, that clearly states, "Any collector manipulating this process . . . will be grounds for immediate termination." *See* (Exhibit 5, Memorandum from Mike Scher to All Collectors, cc'ing Valerie Hue, dated August 7, 2003).

- "All NSF checks for 5k or greater gross must be approved by me before any check is redeposited, and I will send that approval to Shawna McHue for processing. Under no circumstances should anyone request a redeposit of a check without clear notes with bank information including the tel number of the bank that indicate we verified the availability of the funds and that there is no stop payment." *See* (Exhibit 5, E-mail from Kathy Obenshain to Commercial Operations Managers dated January 16, 2004).

    6.    Plaintiff alleges that these documents are insufficient to state the check handling policies "because the defendant has not made clear which of the documents at Exhibit A, if any, contain the check handling policy which defendant asserts plaintiff instructed employees to violate. Nor does the answer supply the requested information

---

and NCO's document production. Thus, plaintiff was in possession of these documents prior to September 8, 2005.

regarding the identity of persons who defendant claims were instructed by plaintiff to violate the procedures, the witnesses to the instruction, etc." (D.I. 30 at ¶ 13).

7.  As confirmed in defendant's discovery responses, <u>all</u> of the documents attached as Exhibit 5 to the Motion represent the relevant check handling policies. Plaintiff violated the policies by resubmitting and/or instructing her subordinates to resubmit NSF checks to debtors' banks "without talking to the debtor or making any attempt to verify funds with the bank." *See* (Exhibit 5, <u>Memo for Record</u> from Kathy Obenshain to Josh Ginden, Steve Leckerman and Dina Loft dated January 22, 2004).

8.  Within the <u>Memo for Record</u>, attached to plaintiff's Motion, Ms. Obenshain explains:

> Through a preliminary investigation with Valerie Hue, I was told that Eric Shaw the Mid Balance manager had gone over the NSF's from November fee production not yet recovered and asked the collectors 'will the money be there' [and] based on their answers yes or no he told them to recreate the DCI's and put the money back on. <u>We decided this is fraudulent behavior</u>, discussed the issue with Steve Leckerman and demoted him from management to producer. Matt Lane has been terminated. Today Ted Fox and I started conducting an independent investigation interviewing producers in Dover,<u> who stated that they were advised by management to recreate DCIs without talking to debtors, redeposit checks without verification of funds and not pull checks and EOM even if told that no funds were available from the debtor.</u>  Most of them have made written statements confirming these facts. <u>Pending completion of this investigation we have suspended Valerie Hue anticipating termination.</u>

*See* (Exhibit 5, <u>Memo for Record)</u>.

9.  NCO also produced witness statements as part of its Initial Disclosures which expressly identify NCO employees who were instructed by plaintiff to violate company policy. *See* (Statements of Kimberly Marlow, Eric Shaw, Dave McQuisten,

and Brad Reavis attached at Exhibit A hereto). For example, the witness statement of Kimberly Marlow states:

> [T]he directive that we were given by our manager (Valerie Hue) about NSF checks is as follows. On a monthly basis we were given the directive to run checks that we knew were not going to clear the bank. We were directed to pull cash journals and put the checks back on that were from the previous months. Then we pulled each collector in one by one and discussed the checks that were to be run and the level of comfort of them clearing. On some occasions even the checks that the collectors stated that would not clear or verify would still be run by directive of Valerie Hue. Especially if we were relatively close to hitting our EOM number given to corporate.

*See* (Exhibit A). It is baffling to NCO how plaintiff can argue that NCO has failed to identify persons who plaintiff directed to violate the check handling policy.

10. With respect to plaintiff's demand for cash journal ledgers, hold check request forms, U-Deposit forms, post date check reports, and NSF reports prepared in the defendant's Dover office between July 1, 2003 and March 2004, NCO has repeatedly objected to this request as vague, ambiguous, harassing, burdensome, overly broad, and irrelevant. The request encompasses thousands and possibly millions of documents due to the nature of NCO's business. As a debt collection agency, NCO processes millions upon millions of payments each year. There are reports, forms, and paperwork associated with every debtor and every payment. As a matter of course, the vast majority of the original paperwork is not retained except as notations in accounting records and debtor account notes.

11. Even assuming *arguendo* that NCO could somehow re-create the requested cash journal ledgers, hold check request forms, U-Deposit forms, post date check reports, and NSF reports, these documents are <u>completely irrelevant</u> to the issue in this case, *i.e.*, whether NCO terminated plaintiff's employment because she is African

American and had previously complained of sexual harassment, or—as NCO avers—because plaintiff was caught flagrantly violating (and instructing others to violate) NCO's check handling policy. Further, such materials would not even lead to the discovery of relevant evidence not otherwise obtainable from less expensive means.

12. Plaintiff claims that the requested documents are relevant because they "would enable plaintiff to determine whether and to what extent various employees complied with policies relevant to the case." (D.I 30 at ¶ 16). As demonstrated by the attached witness statements, NCO will stipulate that many employees in the Dover office, by their own admission, violated NCO's check handling policy *on plaintiff's directive. See* (Exhibit A). Therefore, expending large sums of money and man-power trying to retrieve documents that may show that others in the Dover office were violating the check handling policy would be an exercise in futility.

WHEREFORE, NCO respectfully requests that the Court deny plaintiff's Motion and grant NCO attorneys' fees and costs incurred in responding to the Motion, and any other relief that the Court deems appropriate.

Of Counsel:

David Israel
Sessions, Fishman & Nathan, L.L.P.
114 Northpark Boulevard, Suite 10
Covington, LA 70433
Telephone: (985) 871-8181

Elizabeth K. Fite
Law Office of Elizabeth Fite, P.A.
15316 N. Florida Avenue, Suite 100
Tampa, Florida 33613
Telephone: (813) 908-6121

Dated: November 7, 2005

/s/ Jennifer C. Jauffret
Jennifer C. Jauffret (#3689)
jauffret@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19899
Telephone: (302) 651-7700

*Counsel for NCO Financial Systems, Inc.*

**EXHIBIT A**



## NCO Financial Systems, Inc.
Commercial Services Division
802 Silver Lake Blvd.
Dover, DE  19904
(302) 735-4891, 800-788-1007 (Voice)
(302) 735-1835 (Fax)
sales.dover@ncogroup.com

# Fax

| | | | |
|---|---|---|---|
| **To:** | Kathy Obenshain | **From:** | Brad Reavis |
| **Fax:** | 504-837-3250 | **Date:** | 1/21/04 |
| **Phone:** | | **Pages:** | 2, including cover |
| **Re:** | See attached | | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

The information contained in this facsimile message is privileged and confidential. The information is intended for the use of the recipient named above only. If the reader of this is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone and return the original message to us at the above address via the U.S. Postal Service.

I SPOKE TO TED AND KATHY AND ADVISED BOTH OF THEM THAT WE WERE ENCOURAGED BY OUR MANAGER TO LOOK AT OUR NSF's THAT BOUNCED DURING THE MON TO REDEPOSIT AT 2PM AND IN ONE CASE REGEATE FOR ALUND FEE.

*NCO Financial Systems, Inc.*®
*Commercial Services*



Kathy Obenshain,

Per your request, the following is a summary of the phone conversation this morning with Ted Fox.

In conversations with debtors requesting a check not be deposited, have resulted in the check not being 'pulled', per manager direction.

Checks that have been returned NSF, have been directed to be 'put back on'. Attempts to contact the debtor have and have not happened.

We, as a group, have at times been told 'no checks are being pulled', which led to no attempt to pull or change check dates, knowing they would possibly be returned. HOLD check request or deletions have gone unsigned in some cases.

This has been a 'semi' practice for some time, and I only have started notating the accounts in my que, the last few months.

Dave McQuisten

January 22, 2004

To: Ted Fox
Cc: Kathy Obenshain

    Per our conversation about policy & procedure, the directive that we were given by our manager (Valerie Hue) about NSF checks is as follows.

    On a monthly basis we were given the directive to run checks that we knew were not going to clear the bank. We were directed to pull cash journals and put the checks back on that were from the previous months. Then we pulled each collector in one by one and discussed the checks that were to be run and the level of comfort of them clearing. One some occasions even the checks that the collectors stated that would not clear or verify would still be run by directive of Valerie Hue. Especially if we were relatively close to hitting our EOM number given to corporate.

    I know for a fact that collectors have asked for some checks to be pulled at the end of the month because they knew that they would not clear. She (Val) stated that she had a directive from Kathy Obenshain that "we are not pulling any checks off the system and to make this happen". Collectors have complained several times about having to put on bad checks at the end of the month that they knew would not clear and would put them at a negative at the beginning of the following month.

    Last month before Valerie left for vacation she gave the directive to Eric Shaw (Mid Balance Manager) and handed him all the cash journals of the collectors that she found multiple NSF's on and told him to "GET THEM ALL ON". I know this because we were in our morning managers meeting and she had also given me administrative directives in her absence, which did not have anything to do with the above.

Sincerely,

Kimberley Marlow

To: Ted Fox
    Kathy Obenshain

Date: January 22, 2004

You have asked me to explain to you the incidents that occurred toward the end of the month of December 2003. I was given a directive by Valerie Hue, to acquire a list of all NSF checks to review with the large & super mid collectors. I was to advise her of how much net fee was available in non-sufficient funds checks. I was then instructed to review with each individual collector the status of their non-sufficient funds checks, for the purpose of locating additional fees we could add on to the end of the month figures.

After reviewing with each collector, I was instructed by Valerie Hue to inform the collectors to re-input the checks into the system. Normally she would have handled this herself, which she has done in the passed months with Large Balance, but she was out of the office and this fell upon me to do. This practice was, as I found out from reviewing with each collector, was the norm, they were just surprised that 'I' was doing this, since she normally handled it herself. Each collector I spoke with in Large Balance seemed to know the end of the month routine.

In reviewing the checks with the collectors, there were some judgments made for some of the checks not to run do to stop payments, and/or too many NSFs in some cases. I myself did not allow those to run. I gave Michael Scher, a list of these checks that were entered and not entered into the system, as I did keep a record. You ask me what happened at the end of December, this practice has been going on for as long as I can remember, even as a collector, from passed managers, I went through the same routine, and was instructed to put on checks the same way.

In addition, I have had collectors complain to me, regarding check they desired to pull because they were insufficient, but were unable to, because they had been told by Valerie Hue they could not pull them. This was even prior to checks being printed. I can only go on the direction of my manager, as she was my superior.

Sincerely,

Eric Shaw

ES/jlb

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2005, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following and which has also been served as noted:

### VIA ELECTRONIC MAIL

Jeremy W. Homer, Esq.
Parkowski & Guerke, P.A.
116 West Water Street
P.O. Box 598
Dover, DE 19903

Alyssa M. Schwartz (#4351)
schwartz@rlf.com

RLF1-2873343-1