# EXHIBIT A

RLF1-2967005-1

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)

**(Cite as: 1998 WL 164994 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Coletta BRADY and Joel Brady, Sr., H/W
v.
CHELTENHAM TOWNSHIP, Steven W. Ott, George Crowley, Mark Potts, John Santarelli, Gary Gantz, Michael Eves, Harry Hall And Michael Levitsky
No. 97-4655.

April 9, 1998.

*MEMORANDUM AND ORDER*

YOHN, J.

*1 This civil rights action is brought against Cheltenham Township, its chief of police, and seven employees of the Cheltenham Township Police Department. In their amended complaint, plaintiffs allege that defendants' search of plaintiffs' home violated their rights under the Fourth, Fifth, and Fourteenth Amendments. They bring this action under 42 U.S.C. §§ 1981, 1983, and 1985, together with a state law claim for trespass to real and personal property. Defendants seek summary judgment on all claims. For the reasons set forth below, defendants' motion will be granted in part and denied in part.

STANDARD OF REVIEW

Rule 56 provides that summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment may meet its burden with a showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must draw all reasonable inferences in the nonmovant's favor, and "the evidence of the nonmovant is to be believed." *Anderson v. Liberty Lobby, Inc,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant must do more than rest upon mere allegations, general denials, or vague statements, *Trap Rock Indus., Inc v. Local 825,* 982 F.2d 884 (3d Cir.1992), and instead "must present affirmative evidence to defeat a properly supported motion for summary judgment," *Anderson,* 477 U.S. at 257. No genuine issue for trial exists "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

BACKGROUND

The following account accepts plaintiffs' evidence as true for purposes of this motion, with all reasonable inferences therefrom construed in a light most favorable to the plaintiff.

Plaintiffs own and reside in a single-family home in Elkins Park, Pennsylvania. Plaintiffs and their relevant family members are African-American, and the development in which plaintiffs live is predominantly African-American. The individual defendants, all of whom are white, are employees of the Cheltenham Township Police Department.

In July 1995, plaintiffs' son Joel Brady, Jr. ("Joel") was living in Baltimore, Maryland, but he was visiting the Philadelphia area to see his grandmother, Cornelia Thomas, who was staying at plaintiffs' home for a two-week visit. On July 17, Joel was identified from a photo array by a white woman who claimed that he had robbed and raped

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00225-KAJ   Document 79-2   Filed 04/17/2006   Page 3 of 11   Page 3 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)
(Cite as: 1998 WL 164994 (E.D.Pa.))

Page 2

her in her home. [FN1]

> FN1. There was no physical evidence that a rape had ever actually occurred, and all charges against Joel were eventually dropped.

*2 Defendant Santarelli, a police detective, prepared a probable cause affidavit for submission to a local District Justice to obtain an arrest warrant. The arrest warrant was issued on July 18, bearing a computer-printed time of 2:19 p.m. However, according to Mrs. Thomas, the only person then at home, the police arrived at plaintiffs' door around 1:30 p.m. A neighbor also observed that the police were already there at 2:00 p.m. [FN2]

> FN2. A police time card for the attempted service of the warrant bears timestamps indicating that the officers were dispatched at 3:03 p.m., arrived at 3:03 p.m., and completed service at 3:03 p.m. (Pls.' App. Ex. 21, Complaint No. 95-12452.) Plaintiffs point out that accomplishing these acts in a single minute is an "obvious impossibility," which combines with other inconsistencies in police records to show "that documents were created after the fact to cover up an illegal search." (Pls.' Mem. Opp. Summ. J. at 11, ¶ 30.)

Seven police officers, including Santarelli, were present at or outside the home. Mrs. Thomas opened the front door to two uniformed police officers, believed to be defendants Levitsky and Hall, whom she admitted into the foyer. [FN3] The officers misrepresented to her that they were looking for Joel because he owed money to the county, and Mrs. Thomas told them that Joel was not in the house. The taller of the two officers proceeded to search the house, opening drawers and cabinets in several upstairs rooms, disturbing the contents, and leaving clothes and papers on the floor. The officers did not ask for or receive permission to search the home, and did not inquire whether Mrs. Thomas lived there herself, or had authority to consent to a search. When Mrs. Thomas inquired whether they needed a warrant, the shorter officer took a folded paper from his pocket, saying "this is all we need." The officers left without showing or giving the paper to Mrs. Thomas.

> FN3. The account of what took place in the Bradys' home is drawn from Mrs. Thomas's declaration, which is disputed in its entirety. According to defendants' statements, Detectives Santarelli and Crowley entered the home together with Officers Hall and Levitsky. Det. Santarelli states that he personally handed the arrest warrant to Mrs. Thomas, and Det. Crowley requested and was given Mrs. Thomas's permission to check the interior of the home. No areas were checked that were too small for a human being to hide within, according to Santarelli's statement.

When plaintiff Coletta Brady returned home, she was shocked by the condition of the upstairs rooms. She spoke with an officer she believes to be Levitsky, who was circling outside the home in his police car, and whom she says admitted to searching the house and going through her drawers. Plaintiffs later made several trips together to the police station, attempting to get information and file a written complaint. On July 19, Deputy Chief Farley met with plaintiffs, and took a statement from Mrs. Brady. He did not show her the arrest warrant, and failed to act on her complaint in accordance with the department's directive on citizen complaints concerning police officers.

### DISCUSSION

Plaintiffs have agreed to dismiss the chief of police, Steven W. Ott, as a defendant, and to dismiss their Fifth Amendment claims against all defendants. (Pls.' Mem. Opp. Summ. J. at 14.) A discussion of the remaining issues in the motion for summary judgment follows.

1. Municipal Liability Under 42 U.S.C. §§ 1983 and 1981

It is firmly established that a municipality is not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)

**(Cite as: 1998 WL 164994 (E.D.Pa.))**

liable under 42 U.S.C. § 1983 for the actions of its employees on a theory of respondeat superior. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). "Rather, a municipality is subject to direct liability only where 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible.' " *Parkway Garage, Inc v. City of Philadelphia,* 5 F.3d 685, 692 (3d Cir.1993) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct at 2037-38).

*3 In determining whose acts represent official policy, the court must be mindful that "the authority to make municipal policy is necessarily the authority to make final policy. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St Louis v Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (citation omitted). Where the official policy delegates discretion to a subordinate official, a municipal body "is not liable for the mere failure to investigate by the final policy-maker." *San Filippo v. Bongiovanni,* 30 F.3d 424, 446 (3d Cir.1994).

Plaintiffs contend that Cheltenham Township is liable for Fourth Amendment violations that may have been committed by the individual defendants in this case. Plaintiffs do not allege failure to train. (Pls.' Mem. Opp. Summ. J. at 24.) Instead, as plaintiffs correctly note, "municipal liability hinges on ratification." *Id*

Municipal liability is grounded here if the alleged actions of Deputy Chief Farley constitute ratification by a policymaker of the individual defendants' conduct. On the day after the search of the Bradys' home, the Bradys met with Deputy Chief Farley, Lieutenant Scholly, and Sergeant Hoffner. [FN4] (Pls.' Mem. Opp. Summ. J. at 27.) It was Deputy Chief Farley's decision not to act on the Bradys' complaint in accordance with Directive 94-D-43 (Pls.' App Ex. 29), which enumerates procedures to be followed regarding citizen complaints. Farley's motivation for departing from the directive is disputed. However, even if Farley's admitted departure from the directive constituted his ratification of the officers' actions, no evidence indicates that Farley is a policymaker. Directive 94-D-43 is on its face signed by Chief Ott, who has been dismissed as a defendant. (Pls.' App Ex. 29 at 3.) The Directive does not express any policy of tolerance or approval toward Fourth Amendment violations. Plaintiffs have produced no written policy and cited no other incident that would indicate that Chief Ott or Cheltenham Township has established a policy, custom, or practice of violating or tolerating violations of the Fourth Amendment rights of its citizens. Rather, plaintiffs have argued and provided evidence that Farley "decided not to follow the Directives" issued by his superior, Chief Ott. (Pls.' Mem. Opp. Summ. J. at 13, ¶ 39; Pls.' App. Ex. 26 at 13-14, 27-29.) Because Deputy Chief Farley did not create the policy, but rather departed from it, I will grant summary judgment for Cheltenham Township on plaintiff's claims under 42 U.S.C. § 1983.

> FN4. Farley, Scholly, and Hoffner are not defendants in this case.

I will also grant summary judgment for Cheltenham Township on plaintiffs' § 1981 claims, because plaintiffs have not identified any policy or custom of Cheltenham Township that violates the guarantees of § 1981. Just as with § 1983, a municipality may not be held liable for its employees' violations of § 1981 under a respondeat superior theory. *Jett v Dallas Independent School District,* 491 U.S. 701, 731-32, 109 S.Ct. 2702, 2721, 105 L.Ed.2d 598 (1989) [FN5]. In the absence of respondeat superior liability, a plaintiff under § 1981 must establish that employees, as state actors, exhibited racial animus pursuant to a custom, policy, or practice of their employer. *Id* at 735-36, 109 S.Ct at 2723; *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. Directive 94-D-43 makes no racial distinction whatsoever; rather, it enunciates a policy for the effective resolution of all citizen complaints, and sets forth detailed procedures toward that end. (Pls.' App Ex. 29 at 1-3.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                   Page 4

Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)

**(Cite as: 1998 WL 164994 (E.D.Pa.))**

Plaintiffs have cited no incident that would indicate that Chief Ott or Cheltenham Township has established a policy, custom, or practice of racial discrimination. For the reasons stated above, plaintiffs have not met their burden in this case, and summary judgment will be granted for Cheltenham Township on the § 1981 claim.

> FN5. Since the enactment of the Civil Rights Act of 1991, Pub.L. 102-166, 105 Stat. 1071 (1991), amending 42 U.S.C. § 1981, the Third Circuit has not reconsidered the *Jett* holding. However, the Fourth and Eleventh Circuits have maintained the vitality of *Jett*. *Dennis v. County of Fairfax,* 55 F.3d 151, 156 n. 1 (4th Cir.1995); *Johnson v. City of Fort Lauderdale,* 903 F.Supp. 1520, 1522-23 (S.D.Fla.1995), *aff'd,* 114 F.3d 1089 (11th Cir.1997). Although the Ninth Circuit has found in § 1981 "an implied cause of action against state actors, thereby overturning *Jett* 's holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981," that court nevertheless notes that "the amendment to 42 U.S.C. § 1981 preserves the 'policy or custom' requirement in suits against state actors," and precludes respondeat superior liability. *Federation of African American Contractors v. City of Oakland,* 96 F.3d 1204, 1214-15 (9th Cir.1996); *see also Searcy v. SEPTA,* No. 96-3854, 1997 WL 152791, at *5 n. 7 (E.D.Pa. Mar.27, 1997); *Conway v. City of Philadelphia,* No. 96-8112, 1997 WL 129024, at *4 (E.D.Pa. Mar.20, 1997). A local government is liable only for injuries caused by the execution of official policies or customs, under Supreme Court jurisprudence on both § 1983 and § 1981. *Johnakin v. City of Philadelphia,* No. 95-1588, 1996 WL 18821, at *3 (E.D.Pa Jan.18, 1996) (citing *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

2. Count II: Fourth Amendment Claims Under 42 U.S.C. § 1983

*4 There are disputed issues of material fact regarding whether the officers possessed an arrest warrant at the time of entry, the actual scope of their search, and whether Mrs. Thomas gave or was authorized to give valid consent.

Although it is undisputed that Officers Potts, Eves, and Gantz did not enter the plaintiffs' home, plaintiffs have provided evidence that the seven individual defendants, excluding Chief Ott, met before the search to coordinate their actions. (Potts Statement, Pls.' App. Ex. 16.) From that meeting, and from evidence suggestive of a subsequent cover-up, a jury might infer that all seven are liable as civil conspirators. [FN6] Accordingly, I will deny summary judgment on plaintiffs' Fourth Amendment claims against all individual defendants.

> FN6. As noted earlier, Cheltenham Township may not be held liable under § 1983. In their official capacities, employees of a municipal police department are "part of the same entity and therefore cannot be charged with civil conspiracy" because an entity cannot conspire with itself. *Bullick v. Colebrookdale Township,* No. 96-1266, 1997 WL 587248, at *4 (E.D.Pa. Sept.12, 1997) (citing *Jagielski v. Package Machine Co.,* 489 F.Supp 232, 233 nn. 1-3 (E.D.Pa.1980)). However, these defendants acting in their individual capacities may be held liable for civil conspiracy under § 1983 based on plaintiff's "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Spencer v. Steinman,* 968 F.Supp 1011, 1020 (E.D.Pa.1997) (alteration in original) (citing *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974); *Gallas v. Supreme Court of Pa.,* No. 96-6450, 1997 WL 256972, at *15

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)
**(Cite as: 1998 WL 164994 (E.D.Pa.))**

(E.D.Pa. May 14, 1997)).

Defendants, in their motion for summary judgment, raise a defense of qualified immunity. Qualified immunity protects "government officials performing discretionary functions, [who] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). There is no qualified immunity where "a reasonable jury could find that the unlawfulness of [defendant's] actions was so 'apparent' that no reasonable investigator could have believed his actions were lawful." *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir.1988). Taking plaintiffs' allegations as true, no reasonable police officer could have believed it lawful to search a home with neither consent nor a valid warrant to search, or even to arrest. Since these facts are in dispute, I will deny defendants' motion as to qualified immunity.

3. Counts I and III: Claims Based on Racial Discrimination

Intentional racial discrimination is a necessary element of a claim under either 42 U.S.C. § 1981 or 42 U.S.C. § 1985. *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *General Building Contractors Assoc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Plaintiffs allege that racial animus motivated defendants to violate plaintiffs' Fourth Amendment civil rights. While plaintiffs have offered evidence that is sufficient, if believed, to support their contention that the Fourth Amendment was violated in this case, they have not supported the complaint's conclusory allegations of racial animus with facts that create a rational inference of purposeful discrimination. Because the evidence of record, construed in the light most favorable to plaintiffs, is insufficient to sustain a finding of intentional racial discrimination, the defendants' motion for summary judgment will be granted on these claims.

a. Claims Under 42 U.S.C. § 1981

*5 42 U.S.C. § 1981 provides, in relevant part:
All persons within the jurisdiction of the United States shall have the same right in every State ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.... The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
42 U.S.C. § 1981. The "equal benefit" clause of § 1981 squarely applies to cases involving "misuse of governmental power motivated by racial animus." *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 348 (1st Cir.1995) (citations omitted). It is thereby applicable to plaintiffs' claim that race motivated an illegal search of their home.

Only intentional discrimination is reached by § 1981. *Perry v. Command Performance*, 913 F.2d 99, 102 (3d Cir.1990) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989)). To survive summary judgment, a plaintiff must present facts sufficient to support an inference of discriminatory animus. *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir.1991) (citing *General Building*, 458 U.S. at 389, 102 S.Ct. at 3149).

Since direct evidence of discriminatory intent is rarely available, purposeful discrimination may be inferred from the totality of the circumstances. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Circumstantial evidence of discriminatory intent may include an official's "departure from normal procedures." *Blair v. Philadelphia Housing Authority*, 609 F.Supp. 276, 279 (E.D.Pa.1985) (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir.1981)). "Because this [§ 1981] claim requires proof of intent, an element difficult to establish, summary judgment should be granted with caution." *Bronze Shields, Inc v. New Jersey Dept. of Civil Service*,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)
**(Cite as: 1998 WL 164994 (E.D.Pa.))**

667 F.2d 1074, 1087 (3d Cir.1981) (citations omitted).

It is undisputed that all of the individual defendants are white, that the plaintiffs and their relevant family members are African-American, and that the defendants were aware of plaintiffs' race. However, plaintiffs have presented no evidence that could support a finding of intentional discrimination. In support of their conclusory allegations, plaintiffs offer the following: (1) evidence regarding the actions of Deputy Chief Farley and Lieutenant Scholly, (2) a police statement and depositions in which several defendants described Mrs. Thomas as an "elderly black woman," and (3) a set of photographs taken inside the Bradys' home.

*6 Farley and Scholly are not parties to this case, and their conduct is not relevant to show racial animus on the part of the defendants. Subsequent to the search of the Bradys' home, these individuals allegedly failed to act on the Bradys' complaint. The evidence offered regarding their conduct would suggest, if believed, a departure from normal procedures and a purposeful lack of cooperation when dealing with the Bradys' complaint. However, neither Farley nor Scholly has been sued, and in the absence of a policy, custom, or practice of noncooperation based on racial discrimination, the municipality may not be held liable under respondeat superior for their conduct in an action under § 1981. *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

It is undisputed that several of the individual defendants referred to Mrs. Thomas as an "elderly black woman." Plaintiffs do not characterize this phrase as either untruthful or disrespectful. Plaintiffs contend only that the description gratuitously takes race into account. Such a phrase is no more suggestive of racial discrimination than of age or gender discrimination. As the First Circuit points out:

> While the summary judgment mantra requires us to draw every reasonable inference in favor of the nonmoving party, inferences, to qualify, must flow rationally from the underlying facts; that is, a suggested inference must ascend to what common sense and human experience indicates is an acceptable level of probability. This means, of course, that a court pondering a Rule 56 motion need not embrace inferences that are wildly improbable or that rely on "tenuous insinuation." This principle is dispositive of appellant's claim of racial discrimination. While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists.

*National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743-44 (1st Cir.1995) (citations omitted). A mere descriptive phrase in which a police officer observes an individual's race in context with other identifying characteristics is not evidence from which racial animus may be inferred. [FN7]

> FN7. Courts evaluating police statements for evidence of racial animus have required some element of disrespect fairly attributable to the characteristic of race. See, e.g., *Alexis v. McDonald's Restaurants of Mass.*, 67 F.3d 341, 347-48 (1st Cir.1995) (sustaining § 1981 claim against officer who told African-Americans, "You people have no rights," but not against officer who was merely angry, unfriendly, impatient, and impolite); *Jackson v. Mills*, No. 96-3751, 1997 WL 570905, at *9 (E.D.Pa. Sept.4, 1997) (sustaining § 1981 claim against officer who stated to African-Americans, "[W]hy do all you people act like this? All you people need to be locked up and the key thrown away," but not against other officers accused of false arrest and excessive force).

The only remaining evidence offered in plaintiffs' attempt to create an issue of material fact is a set of photographs taken inside the Bradys' home, reconstructing the appearance of three rooms before and after the search. (Pls.' App. Ex. 8-10.) The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                         Page 7
Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)
(Cite as: 1998 WL 164994 (E.D.Pa.))

photographs show a generally neat and attractive home with some open drawers and cabinets, the contents of which have been slightly disarrayed. Some clothes and papers, not shown in the photographs, were also found on the floor. (C. Brady Decl. at 2-3, Pls.' App. Ex. 3.) Plaintiffs characterize this as "brazen vandalism," and infer from it that defendant Levitsky "intentionally demonstrated to Mr. and Mrs. Brady his belief they were second class citizens who had no Fourth Amendment rights, and that in Cheltenham Township white policemen could violate the Constitutional rights of black citizens with impunity." (Pls.' Mem. Opp. Summ. J. at 26.) I conclude that no such inference of racial animus is remotely possible to a rational jury on the basis of the evidence presented.

*7 In the instant case, no issue of material fact exists regarding plaintiffs' allegations of racial animus. No evidence has been offered showing that these individual officers, their department, or Cheltenham Township has a history of discriminatory actions, or that their conduct has had a history of disparate impact on minority groups. *See Seeney v. Kavitski,* No. 94-1649, 1995 WL 314735, at *5 (E.D.Pa. May 22, 1995); *Blair,* 609 F.Supp. at 279. No evidence has been offered showing that similarly situated white citizens have been treated differently. No evidence has been offered that supports a specific inference of racial animus, rather than a racially neutral disregard for the constraints of the Fourth Amendment.

It is true that an unconsented search of plaintiffs' home with neither a search warrant nor a valid arrest warrant would constitute, if proven, a departure from normal procedures, which may be circumstantial evidence of discrimination. However, virtually every illegal search by a police officer would similarly constitute a departure from normal procedures. This scintilla of circumstantial evidence, absent more, is insufficient to support a rational jury's inference of racial discrimination. *Anderson,* 477 U.S. at 252 ("mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient"). The evidence presented fails to bolster plaintiffs' conclusory allegations of racial animus, which are inadequate to create an issue of fact that would prevent the court from granting summary judgment. *Midnight Sessions, Ltd. v. City of Philadelphia,* No. 90-132, 1990 WL 107347, at *6 (E.D.Pa.1990); *Carter v. Cuyler,* 415 F.Supp. 852, 856 (E.D.Pa.1976). Accepting all of plaintiffs' evidence as true, and drawing all reasonable inferences in plaintiffs' favor, I conclude that there is insufficient evidence to defeat defendants' motion for summary judgment on plaintiffs' § 1981 claims.

b. Claims Under 42 U.S.C. § 1985

The plaintiff is assigned the burden of proving four elements to prevail on a claim under 42 U.S.C. § 1985(3):
> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood,* 463 U.S. at 828-29, 103 S.Ct. at 3356. In addition, § 1985 requires the plaintiff to show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993) (alteration in original) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). There is no presumption of discriminatory purpose, and a plaintiff must clearly show intentional discrimination. *De Botton v. Marple Township,* 689 F.Supp. 477, 482 (E.D.Pa.1988) (citing *Wagner v. Harmer Township,* 651 F.Supp. 1286, 1288 (W.D.Pa.), *aff'd,* 826 F.2d 1058 (3d Cir.1987)).

*8 Based on plaintiffs' evidence that the individual defendants met before the search to coordinate their actions, a rational jury might infer that these defendants entered into a civil conspiracy to deprive plaintiffs of their civil rights under the Fourth

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 8
Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)
(Cite as: 1998 WL 164994 (E.D.Pa.))

Amendment. [FN8] However, for the reasons stated in the discussion of plaintiffs' § 1981 claims, no genuine issue of material fact has been shown to exist regarding the defendants' motivation by racial or otherwise class-based invidiously discriminatory animus. Accordingly, defendant's motion for summary judgment will be granted with respect to plaintiff's claims under § 1985.

> FN8. *See supra* note 6 and accompanying text. No evidence has been offered that would support a finding that Cheltenham Township was part of such a conspiracy. Of the persons who allegedly committed an act in furtherance of a conspiracy to deprive plaintiffs of their Fourth Amendment rights, none was a municipal policymaker, as discussed above in the context of municipal liability under § 1983. Furthermore, at least one judge in this district has held that a municipality is "incapable of forming a mens rea sufficient to satisfy the racial animus or requirement of racially discriminatory motive under § 1985(3)." *Scott v. Township of Bristol*, No. 90-1412, 1990 WL 178556, at *8 & n. 9 (E.D.Pa. Nov. 14, 1990).

4. Count IV: State Law Claims for Trespass to Real and Personal Property

The Supreme Court has noted that "the law of trespass confers protections from intrusion by others far broader than those required by Fourth Amendment interests." *Oliver v. United States*, 466 U.S. 170, 184 n. 15, 104 S.Ct. 1735, 1744 n. 15, 80 L.Ed.2d 214 (1984).

No state law claim was brought against Cheltenham Township, so defendants' argument of governmental immunity under the Pennsylvania Political Subdivision Tort Claims § Act, 42 Pa.C.S.A. §§ 8541-42, is inapplicable. As individuals, the officers may assert official immunity under 42 Pa.C.S.A. §§ 8545-50. However, § 8550 of that title "abrogates immunities with respect to individual employees and officials who are sued because of willful misconduct." *Parsons v. City of Philadelphia*, 833 F.Supp. 1108, 1118 (E.D.Pa 1993) (citations omitted). Because willful misconduct is claimed, official immunity under the Tort Claims Act does not shield the individual defendants in their individual capacities.

Trespass to personal property may be committed by mere intentional physical contact with the chattel of another, and if done without consent or any other privilege, subjects the actor to liability for harm caused to the chattel. Restatement (Second) of Torts § 217 cmt. e (1965). Such an actor is subject to liability if, and only if:
  (a) he dispossesses the other of the chattel, or
  (b) the chattel is impaired as to its condition, quality, or value, or
  (c) the possessor is deprived of the use of the chattel for a substantial time, or
  (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.
*Id.* § 218. The evidence in this case indicates that plaintiffs' clothes, papers, and other chattels were intentionally touched and moved by a defendant. If plaintiffs prevail on their Fourth Amendment claims by proving that defendants were not acting with valid consent or within the scope of a valid warrant, no privilege would protect defendants from liability. However, even assuming that no privilege applies, these defendants may not be held liable because the record fails to disclose any evidence that any of the four conditions listed in Section 218 of the Restatement has been satisfied. I will therefore grant summary judgment to all defendants as to the claim of trespass to personal property.

*9 No such requirement of actual harm or deprivation is required to ground liability for a trespass to land. *Jones v. Wagner*, 425 Pa.Super. 102, 624 A.2d 166, 169 (Pa.Super.Ct.1993). Pennsylvania defines the common law tort of trespass to land as the intentional entry upon land in the possession of another. *Bullick v. Colebrookdale Township*, No. 96-1266, 1997 WL 587248, at *2 (E.D.Pa. Sept. 12, 1997) (citing Restatement (Second) of Torts § 158). Such a claim may not ordinarily be sustained against an officer who never went onto the property or entered the home. *See*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 164994 (E.D.Pa.)

(Cite as: 1998 WL 164994 (E.D.Pa.))

Page 9

*id.* It is undisputed that defendants Potts, Gantz, and Eves were stationed outside the Bradys' home (Pls.' Mem. Opp. Summ. J. at 8, ¶ 23), and plaintiffs have presented no evidence that they ever entered onto plaintiffs' land. However, plaintiffs' evidence is sufficient to support an inference that all seven of the officers entered into a civil conspiracy to trespass onto plaintiffs' land. I will therefore deny summary judgment for defendants Potts, Gantz, and Eves on the trespass claim.

Either valid consent or a valid arrest warrant might confer a privilege of entry onto plaintiffs' real property, within the scope of the consent or warrant. There are disputed issues of material fact regarding which defendants entered the home, whether they even possessed an arrest warrant at the time of entry which might authorize the entry, the actual scope of the search, and whether Mrs. Thomas gave or was authorized to give valid consent. If these issues are resolved in plaintiffs' favor, the defendants will not be shielded by qualified immunity, because their alleged conduct could not have been viewed as lawful by a reasonable officer. *See Lee v. Mihalich,* 847 F.2d at 69. I will therefore deny summary judgment for the individual defendants on the claim of trespass to real property.

CONCLUSION

By agreement of plaintiffs, I will dismiss all claims against defendant Steven W. Ott, and the Fifth Amendment claims against all defendants. Summary judgment will be granted to Cheltenham Township on claims against it under 42 U.S.C. §§ 1983 and 1981. Because plaintiffs have failed to present affirmative evidence that supports their claims of racial discrimination under 42 U.S.C. §§ 1981 and 1985, I will grant summary judgment to all defendants on Counts I and III of the Amended Complaint. I will also grant summary judgment on the state law claims for trespass to personal property.

Since no claim survives against Cheltenham Township, judgment will be entered in the township's favor. However, material facts are disputed with respect to plaintiffs' Fourth Amendment claims against the individual defendants in their individual capacities. I will therefore deny summary judgment on plaintiffs' remaining claims. An appropriate order follows.

*ORDER*

*10 AND NOW, this day of April, 1998, upon consideration of defendants' motion for summary judgment, plaintiffs' response thereto, and supplemental submissions of the parties, IT IS HEREBY ORDERED that defendants' motion for summary judgment is:
  1. GRANTED on all claims against defendants Steven W. Ott and Cheltenham Township. The Clerk will enter judgment in favor of Steven W. Ott and Cheltenham Township only and against plaintiffs.
  2. GRANTED on plaintiffs' Fifth Amendment claims.
  3. GRANTED on Counts I and III of the amended complaint.
  4. GRANTED on state law claims of trespass to personal property, and DENIED on state law claims of trespass to real property in Count IV.
  5. DENIED in all other respects.

**Motions, Pleadings and Filings (Back to top)**

• 2:97cv04655 (Docket) (Jul. 17, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following and which has also been served as noted:

### VIA HAND DELIVERY

Jeremy W. Homer, Esq.
Parkowski & Guerke, P.A.
116 West Water Street
P.O. Box 598
Dover, DE 19903

Alyssa M. Schwartz (#4351)
schwartz@rlf.com