EXHIBIT

1A

# Memorandum

To:          All Employees

From:        Ted Fox
             Kathy Obenshain

Date:        January 21, 2004

Re:          DCI'S

Effective immediately, we are going back to the previously successful method of accepting DCI's from debtors.

(1)    The Collectors will use our approved check fax form.
(2)    Fax the approved check fax form to the debtor.
(3)    The authorized check signer signs the approved check fax form and faxes it back along with a copy of the check.

All **GCM's** are responsible for maintaining the DCI forms on a daily basis. Absolutely no check information can be input by any collector. The DCI information must be input by an Administrative Assistant or designated Manager and all DCI copies will be maintained in a secure location. Do not give the copies to the producers. Deviation from this policy will be grounds for immediate termination. This paper trail will now provide us with the method for verifying checks at EOM.

KAO:mm

B-131

000086

EXHIBIT

1B

# Memorandum

To:          All General Collection Managers

From:        Kathy Obenshain

Date:        August 2, 2002

Re:          Direct Check Form

In anticipation of conversion and to generate a serious INCREASE in revenue for the month of August, we will allow you to start using the attached DIRECT CHECK form and get your payments immediately over the telephone instead of waiting for the faxed, signed copy.

The rules are simple: The call must be recorded and a supervisor must sign and review all forms before they are sent to accounting. If there is any falsification with regard to acquiring this information from an authorized check signer who clearly understands this process, it will be grounds for immediate termination. Also, any collector manipulating this process by utilizing a check enroute or completing this type of transaction without the conversation fully documented "via" the digital audio taping system as well as on the CRS system or with any other abuse will be grounds for immediate termination. This is a huge asset for all of you to use everyday and drive home that sense of urgency that we sometimes forget. Please call me if you have any questions

KAO:mm

000087



EXHIBIT

2

## Complaint Procedure

If an employee experiences any job-related harassment based on sex, race, national origin, disability, or another factor, or if an employee believes he or she has been treated in an unlawful, discriminatory manner, the incident should be promptly reported to the department manager. The manager immediately will notify Corporate Employee Relations of the complaint. In the alternative, the employee can contact Corporate Employee Relations directly. An employee should not allow an inappropriate situation to continue by not reporting it, regardless of who is creating that situation. To the maximum extent possible, all complaints will be kept confidential.

In response to every complaint, the Company will conduct a prompt and thorough investigation, and implement corrective and preventative actions where necessary. If NCO determines that an employee has violated this policy, appropriate disciplinary action will be taken against the offending employee, up to and including termination of employment.

NCO prohibits any form of retaliation against any employee for filing a bona fide complaint under this policy, for assisting in a complaint under this policy, or for assisting in a complaint investigation. However, if, after investigating any complaint of harassment or unlawful discrimination, NCO determines that the complaint is not bona fide or that an employee has provided false information regarding the complaint, disciplinary action may be taken against the individual who filed the complaint or who gave the false information.

Each member of management is responsible for creating an atmosphere free of discrimination and harassment, sexual or otherwise. All employees are responsible for respecting their coworkers' rights.

B-133

01/21/2004 15:46 FAX





## NCO Financial Systems, Inc.
Commercial Services Division
802 Silver Lake Blvd.
Dover, DE  19904
(302) 735-4691, 800-788-1007 (Voice)
(302) 735-1835 (Fax)
sales.dover@ncogroup.com

# Fax

| To: | Kathy Obenshain | From: | Dave McQuisten |
|---|---|---|---|
| Fax: | | Date: | 1/21/04 |
| Phone: | | Pages | 2, including cover |
| Re: | See attached | | |

☐ **Urgent**   ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

B-134

000083

*The information contained in this facsimile message is privileged and confidential. The information is intended for the use of the recipient named above only. If the reader of this is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in*

01/21/2004 15:47 FAX                                                    ☑002

_____ NCO Financial Systems, Inc. ®
                                                    Commercial Services



Kathy Obenshain,

Per your request, the following is a summary of the phone conversation this morning
with Ted Fox.

In conversations with debtors requesting a check not be deposited, have resulted in the
check not being 'pulled', per manager direction.

Checks that have been returned NSF, have been directed to be 'put back on'.  Attempts
to contact the debtor have and have not happened.

We, as a group, have at times been told 'no checks are being pulled', which led to no
attempt to pull or change check dates, knowing they would possibly be returned.
HOLD check request or deletions have gone unsigned in some cases.

This has been a 'semi' practice for some time, and I only have started notating the
accounts in my que, the last few months.

B-135

01/21/2004 15:36 FAX

EXHIBIT

3B



## NCO Financial Systems, Inc.

Commercial Services Division
802 Silver Lake Blvd.
Dover, DE  19904
(302) 735-4891, 800-788-1007 (Voice)
(302) 735-1835 (Fax)
sales.dover@ncogroup.com

# Fax

| To: | Kathy Obenshain | From: | Mark LeFevre |
|---|---|---|---|
| Fax: | | Date: | 1/21/04 |
| Phone: | | Pages | 2, including cover |
| Re: | See attached | | |

☐ Urgent   ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

B-136

009991

The information contained in this facsimile message is privileged and confidential. The information is intended for the use of
the recipient named above only. If the reader of this is not the intended recipient, you are hereby notified that any

☑002

01/21/2004 15:36 FAX

# NCO®

*NCO Financial Systems, Inc.*
Commercial Services Division
202 Silver Lake Blvd.
Dover, DE 19904
(302) 735-4891, 800-762-1897 (Voice)
(302) 735-4393 (Fax)

RE: _____

Ref Number: _____

Comments: _____

Per our conversation;

It has been branch policy to run
checks that we were asked not to by
debtors, I.E "we are not pulling Any checks
off the system"

Additionally checks have been red-iped
with no hope of clearing and also recreated (again
in the computer.

B-137

01/21/2004 16:08 FAX

EXHIBIT

3C



# NCO ®

*NCO Financial Systems, Inc.*
Commercial Services Division
802 Silver Lake Blvd.
Dover, DE  19904
(302) 735-4891, 800-788-1007  (Voice)
(302) 735-1835 (Fax)
sales.dover@ncogroup.com

# Fax

| | | | |
|---|---|---|---|
| **To:** | Kathy Obenshain | **From:** | Brad Reavis |
| **Fax:** | 504-837-3250 | **Date:** | 1/21/04 |
| **Phone:** | | **Pages** | 2, including cover |
| **Re:** | See attached | | |

☐ Urgent   ☐ For Review ☐ Please Comment ☐ Please Reply☐ Please Recycle

B-138

The information contained in this facsimile message is privileged and confidential. The information is intended for the use of

01/21/2004 16:08 FAX                                                    002/002

I SPOKE TO TED AND KATHY AND
ADVISED BOTH OF THEM THAT WE WERE
ENCOURAGED BY OUR MANAGER TO LOOK AT
OUR NSF'S THAT BOUNCED DURING THESE MON
TO REDEPOSIT AT 2.0M AND IN ONE CASE
RECREATE FOR MLIND FEE.

B-139

000094

01/22/2004 15:51 FAX 3027351635          NCO ACCOUNTING          → Kathy O          ✎001

EXHIBIT

3D

# NCO

## NCO Financial Systems, Inc.
Commercial Services Division
802 Silverlake Blvd., Ste 200
Dover, DE  19904
(302) 735-4891  800-788-1007 (Voice)
(302) 735-1635   (Fax)
*Mail Payments To:*
P.O. Box 41593
Philadelphia, PA 19101
*Overnight Payments To:*
507 Prudential Road
Department 23
Horsham, PA 19044

# Fax



| | |
|---|---|
| **To:** Kathy Obenshain | **From:** Kim Marlow (Acting GCM) |
| **Fax:** | **Date:** |
| **Phone:** | **Pages** |
| **Re:** | |

□ Urgent  ☑ For Review  □ Please Comment  □ Please Reply  □ Please Recycle

B-140

000095

. . . . . . . . tion contained in this facsimile message is privileged and confidential. The information is intended for the use . . . . . . . is not the intended recipient, you are hereby notified that any . . . . . .

01/22/2004 16:51 FAX 3027351635    NCO ACCOUNTING    ⟶ Kathy O    ☒002

January 22, 2004

To:    Ted Fox
Cc:    Kathy Obenshain

Per our conversation about policy & procedure, the directive that we were given by our manager (Valerie Hue) about NSF checks is as follows.

On a monthly basis we were given the directive to run checks that we knew were not going to clear the bank. We were directed to pull cash journals and put the checks back on that were from the previous months. Then we pulled each collector in one by one and discussed the checks that were to be run and the level of comfort of them clearing. One some occasions even the checks that the collectors stated that would not clear or verify would still be run by directive of Valerie Hue. Especially if we were relatively close to hitting our EOM number given to corporate.

I know for a fact that collectors have asked for some checks to be pulled at the end of the month because they knew that they would not clear. She (Val) stated that she had a directive from Kathy Obenshain that "we are not pulling any checks off the system and to make this happen". Collectors have complained several times about having to put on bad checks at the end of the month that they knew would not clear and would put them at a negative at the beginning of the following month.

Last month before Valerie left for vacation she gave the directive to Eric Shaw (Mid Balance Manager) and handed him all the cash journals of the collectors that she found multiple NSF's on and told him to "GET THEM ALL ON". I know this because we were in our morning managers meeting and she had also given me administrative directives in her absence, which did not have anything to do with the above.

Sincerely,

Kimberley Marlow

B-141

009996





### NCO Financial Systems, Inc.

Commercial Services Division
802 Silver Lake Blvd.
Dover, DE  19904
(302) 735-4891, 800-788-1007 (Voice)
(302) 735-1835 (Fax)
sales.dover@ncogroup.com

# Fax

| To: | Kathy – Michelle | From: | Eric Shaw |
|---|---|---|---|
| Fax: | 504-837-3230 | Date: | 1/22/04 |
| Phone: | | Pages | 2, including cover |
| Re: | See attached | | |

☐ Urgent  ☐ For Review ☐ Please Comment ☐ Please Reply☐ Please Recycle

B-142

000097

The information contained in this facsimile message is privileged and confidential. The information is intended for the use of

01/22/2004 16:03 FAX 3027354891          NCO Group                          ☒002

To: Ted Fox
    Kathy Obenshain

Date: January 22, 2004

You have asked me to explain to you the incidents that occurred toward the end of the
month of December 2003. I was given a directive by Valerie Hue, to acquire a list of all
NSF checks to review with the large & super mid collectors. I was to advise her of how
much net fee was available in non-sufficient funds checks. I was then instructed to
review with each individual collector the status of their non-sufficient funds checks, for
the purpose of locating additional fees we could add on to the end of the month figures.

After reviewing with each collector, I was instructed by Valerie Hue to inform the
collectors to re-input the checks into the system. Normally she would have handled this
herself, which she has done in the passed months with Large Balance, but she was out of
the office and this fell upon me to do. This practice was, as I found out from reviewing
with each collector, was the norm, they were just surprised that 'I' was doing this, since
she normally handled it herself. Each collector I spoke with in Large Balance seemed to
know the end of the month routine.

In reviewing the checks with the collectors, there were some judgments made for some of
the checks not to run do to stop payments, and/or too many NSFs in some cases. I myself
did not allow those to run. I gave Michael Scher, a list of these checks that were entered
and not entered into the system, as I did keep a record. You ask me what happened at the
end of December, this practice has been going on for as long as I can remember, even as
a collector, from passed managers. I went through the same routine, and was instructed to
put on checks the same way.

In addition, I have had collectors complain to me, regarding check they desired to pull
because they were insufficient, but were unable to, because they had been told by Valerie
Hue they could not pull them. This was even prior to checks being printed. I can only go
on the direction of my manager, as she was my superior.

Sincerely,

Eric Shaw

ES/jlb                              B-143

000098

# NCO®

## Job Discussion Summary Form

Pleas

EXHIBIT

4

| Last Name | First Name | Social Security Num |
|---|---|---|
| Hue | Valerie | 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 |

| Location (City, State) | Date |
|---|---|
| Dover, DE | 1/28/04 |

**Nature of Discussion (check one):**
☐ Verbal Warning    ☐ Written Warning    ☐ Final Warning    ☒ Termination

**Topic of Discussion (check applicable area(s)):**
☐ Attendance    ☐ Performance    ☐ Insubordination    ☒ Violation of Co. Policy

**Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):**

As an employee of NCO, meeting performance expectations is a requirement of your position.

In April 1999, you were trained on the duties of your position. This training provided you with details on the regulations that all employees must adhere to.

On January 21, 2004 it was brought to management's attention and has been determined that you violated Company policy, and acted in an unprofessional manner by instructing NCO employees to violate NCO's check handling procedures.

You were suspended with pay from 1/21/03 through 1/28/03.

Your actions violate NCO policy, call to question your ability to adequately perform the tasks assigned to you, and will not be tolerated.

**Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):**

Termination

**Employee Comments:**

B-144

Employee Signature

Manager/Supervisor Signature/Date

000093

Copy - Human Resources

**NCO** ®

## Job Discussion Summary

EXHIBIT

5

## ** PLEASE PRINT OR TYPE **

| | | SOCIAL SECURITY NUMBER |
|---|---|---|
| LAST NAME | FIRST NAME | |
| Hue | Valerie | |

| | | |
|---|---|---|
| LOCATION (CITY, STATE) | ACQUISITION NAME | DATE |
| Dover, DE | M & M | 9/23/02 |

Nature of Discussion (check one):
☒ Verbal Discussion     ☐ Written Warning     ☐ Final Warning     ☐ Termination

Topic of Discussion:
☐ Attendance     ☒ Performance     ☐ Insubordination     ☐ Other

Written Summary [use separate sheet if necessary, include dates, times, who, what, when, why, etc.):

As the General Collections Manager of the Dover office, good customer service and meeting performance requirements are essential to properly service our clients. Your manager and Corporate Employee Relations have had several conversations with you regarding the proper standard operating procedures for administering progressive discipline and performance reviews. On June 11, 2002 you attended Employment Practices Management Training. In June, all managers at the Dover branch were directed that until further notice, all progressive discipline and performance reviews were to be prepared by the Dover location HR representative and reviewed by Corporate Employee Relations before they were issued to employees. This procedure was implemented and Sample Progressive Discipline Forms and Progress Reports were provided for purposes of ensuring the process is conducted in a consistent and quality manner. On September 17, 2002 you had an administrative assistant prepare several Job Discussion Summaries. Without following the proper procedure or reviewing them you issued the Job Discussion Summaries to employees and later discovered some of the Job Discussion Summaries were written incorrectly. You then told the employees they were not valid and would be rescinded. These actions violate your performance expectations, may place the company at risk, evidence poor judgment on your part and will not be tolerated.

Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):

Until further notice Corporate Employee Relations must review any progressive discipline before being issued to employees. If the company at any time in the future has any occasion to question your conduct in relation to the above or if the company receives any information that you have retaliated in any way against any employee you believe may have made accusations about your conduct, you will be subject to disciplinary action up to and including termination. If you have any questions as it relates to your performance expectations, please see me.

Employee Comments:

_____

_____

_____

_____

_____

B- 145

Employee Signature                          Manager/Supervisor Signature/Date

08/28/2004 10:41 FAX



State of Louisiana
County of Jefferson

## SWORN STATEMENT OF BRIAN LAICHE

I, Brian Laiche, hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since _MARCH 1, 1994_. I am currently a _manager_ in the Commercial Division in Metairie, LA.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____          6/28/04
Brian Laiche                              Date

E:\NCO HR FILES\Hue, Valerie\Correspondence\Sworn Statement Laiche.doc

B-146



EXHIBIT
68

State of Louisiana
County of Jefferson

## SWORN STATEMENT OF DARRIN DEESCH

I, Darrin DeEsch, hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since April 13, 1998. I am currently a General Manager in the Commercial Division in Metairie, LA as director of NCO's commercial legal management division and financial investigative services division.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____  6/22/04
Darrin DeEsch                              Date

H:\NCO HR FILES\Rue, Valerie\Correspondence\Sworn Statement.DeEsch.doc

B-147

08/22/2004 07:24 FAX 503 526 9467       NCO FINANCIAL SYSTEMS    → SESSION                ☑002

EXHIBIT

6C

State of Oregon
County of __WASHINGTON__

## SWORN STATEMENT OF STEVE ROSS

I, Steve Ross, hereby confirm under oath the following:

1.  I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since _1/27/97_____. I am currently a Branch Mgr. in the Commercial Division in Portland, Oregon.

2.  At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3.  At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4.  It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5.  It is known that fraudulently violating NCO's check handling policies would result in termination.

6.  I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____                      6/22/04
Steve Ross                                    Date

F:\O\NCO MX FILES\Bac_Valerie\Correspondence\Sworn Statement Ross.doc

B-148

009103

☑001



EXHIBIT

_6D_

State of __GEORGIA__
County of __Fulton__

## SWORN STATEMENT OF CHRIS SANTASIERO

I, Chris Santasiero, hereby confirm under oath the following:

1.  I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since _October 9, 2000_. I am currently a _MANAGER_ in the Commercial Division in _ATLANTA GEORGIA_

2.  At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3.  At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4.  It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5.  It is known that fraudulently violating NCO's check handling policies would result in termination.

6.  I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_Chris Santasiero_                    _6-22-04_
Chris Santasiero                          Date

H:\NCO H.R. FILES\Hue, Valerie\Correspondence\Sworn Statement Santasiero.doc

B-149

06/22/2004 12:06 FAX 3032908410          NCO GROUP                         ☑002/002



State of Colorado
County of Arapahoe

## SWORN STATEMENT OF LENNY CICCARONE

I, Lenny Ciccarone, hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since January 25, 1995. I am currently the managing director in the Commercial Division in Denver, Colorado.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____          6/22/04
Lenny Ciccarone                       Date

S:\DIXIE\NT\FILES\Hue, Valerie\Correspondence\Sworn Statement Ciccarone.doc

B-150

06/24/2004 14:42 FAX 8139842393          NCO FINANCIAL SYSTEMS          ☑002/002



EXHIBIT

6F

State of Florida
County of Hillsborough

## SWORN STATEMENT OF MANNY CARDOZO

I, Manny Cardozo , hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since 02/21/2001_____. I am currently a BRANCH MANAGER in the Commercial Division in Tampa, FL.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____  __04/24/04__
Manny Cardozo               Date

H:\3\NCO HR FILES\Hue, Valerie\Correspondence\Sworn Statement.Cardozo.doc

B-151

☑002

06/22/2004 07:27 FAX 5203259406                    NCO AZ

EXHIBIT

6 G

State of Arizona
County of Pima

## SWORN STATEMENT OF JOE BATIE

I, Joe Batie, hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since January 3, 1991. I am currently the Managing Director in the Commercial Division in Tucson, Arizona.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____  6/22/04
Joe Batie                        Date

R:\ON\NCO HR FILES\Hue_Valerie\Correspondence\Sworn Statement_Batie.doc

B-152

000107

☑002

06/24/2004 14:56 FAX 3027471031                NCO FINANCIAL SYSTEMS

EXHIBIT

16H

State of Delaware
County of _Kent_____

## SWORN STATEMENT OF MIKE SCHER

I, Mike Scher, hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since _June 1982_ . I am currently a _General Manager_ in the Commercial Division in Dover, Delaware.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been NCO's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

Mike Scher                    1/24/04
                              / Date

H:\DT\NCO FOR FILES\Hue, Valerie\Correspondence\Sworn Statement Scher.doc

B-153

00010

P. 2

Jun 24 04 05:22p

EXHIBIT
6 I

State of Louisiana
County of Jefferson

## SWORN STATEMENT OF JOE THOMAS

I, Joe Thomas, hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since _September 2000_. I am currently a _GCM_ in the Commercial Division in Metairie, LA handling commercial matters arising out of NCO's Boone, NC office.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been Kathy Obenshain's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

Joe Thomas

6-24-04
Date

H:\O\NCO HR FILES\Hue, Valerie\Correspondence\Sworn Statement, Thomas Joe

B-154

000103



State of Louisiana
County of Jefferson

## SWORN STATEMENT OF KATHY OBENSHAIN

I, Kathy Obenshain, hereby confirm under oath the following:

1.  I was employed by NCO Financial Systems, Inc. (NCO) and worked at NCO from December 1, 1994 to April 19, 2004 as the vice president of operations in the Commercial Division.

2.  As the vice president of operations in the Commercial Division, I had consistent contact with Valerie Hue as her superior.

3.  At no time did I instruct any branch manager, including Ms. Hue, to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

4.  As a result of a routine monthly audit, a large number of non-sufficient funds checks were found in Ms. Hue's department. A fact-finding investigation by Corporate Employee Relations and my department was completed, which revealed Ms. Hue was violating NCO's check handling policies.

5.  I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____     _____
Kathy Obenshain                Date

H:\D\NCO HR FILES\Hue, Valerie\Correspondence\Sworn Statement.Obenshain.doc

B-155

01/21/2004 08:53 FAX 3027354821                    NCO Group                                    ☒006





EXHIBIT

8A

## Job Discussion Summary

** *PLEASE PRINT OR TYPE* **

| LAST NAME | FIRST NAME | SOCIAL SECURITY NUMBER |
|---|---|---|
| Lane | Matthew | 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 |

| LOCATION (CITY, STATE) | ACQUISITION NAME | DATE |
|---|---|---|
| Dover, DE | MMI | 1/20/04 |

Nature of Discussion (check one):
☐ Verbal Warning     ☐ Written Warning     ☐ Final Warning     ☒ Termination

Topic of Discussion (check one):
☐ Attendance     ☐ Performance     ☐ Insubordination     ☒ Violation of Co Policy     ☐ Other _____

Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):
NCO policy states that falsification of company records, including but not limited to the misrepresentation or omission of pertinent facts in client or debtor records, phone activity reports, time cards, medical forms, claim or benefits, employment applications or other documents will result in immediate termination.

NCO policy also states that employees who have access to customer records are responsible for ensuring that all customer records placed in NCO's trust are maintained completely and accurately, with full confidentiality. NCO employees shall not knowingly submit a false, fraudulent, or fictitious claim for payment or reimbursement.

NCO's Business Conduct and Work Rules policy states that violation of federal, state or local law will not be tolerated. When such violations occur on the job, relate to work performance, or adversely affect NCO, you will be subject to progressive discipline, up to and including termination.

NCO's Business Conduct and Work Rules policy also states that engaging in any immoral, indecent, or similar conduct during working or non-working hours, whether or not involving NCO or its clients, vendors, or employees, that could potentially result in damage to the reputation of NCO, its clients, or employees will not be tolerated.

On June 4, 2003, you were trained, and agreed to abide by NCO's Commercial Service Compliance Policies.

On December 9, 2004, you changed the direct check (check number 15704) for account S13517 to $19,000.00. On December 13, 2004 you changed this same check number to $16,000.00. On December 19, 2004 you changed this amount once again to $11,000.00. On December 29th, you moved the date ahead to the 31st of December, and then finally on December 31st, 2004 you changed the amount for a final time to $5,000.00. On January 20, 2004 you admitted to your manager, Valerie Hue & Eric Shaw, that you did not have authorization from the debtor to change the amounts of the direct check number 15704 until the December 31, 2004, for the amount of $5,000.00.

Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):
Immediate Termination.

Employee Comments:

_____

_____

_____

_____

*Employee refused to sign*
Employee Signature

*Valerie Hue 1/20/04*
Manager/Supervisor Signature/Date

Copy – Human Resources
Copy – Retained by Department Manager

_____
Human Resources Signature/Date

000111

B-156

Corporate Employee Relations
Revised 7/02

NCO FINANCIAL SYSTEMS

EXHIBIT

8B

06/17/2004 09:23 FAX 3027471031

# NCO®

Job Discussion S....

Please Print or Type

| Last Name | First Name | Social Security Number |
| --- | --- | --- |
| Deppe | Michael | 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 |

Location (City, State)                               Date
Dover, DE                                             June 4, 2003

**Nature of Discussion (check one):**
☐ Verbal Warning   ☐ Written Warning   ☐ Final Warning   ☒ Termination

**Topic of Discussion (check applicable area(s)):**
☐ Attendance   ☐ Performance   ☒ Fraud   ☒ Violation of Co Policy

**Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):**

NCO policy states that falsification of company records, including but not limited to the misrepresentation or omission of pertinent facts in client or debtor records, phone activity reports, time cards, medical forms, claim or benefits, employment applications or other documents will result in immediate dismissal.

NCO policy also states that employees who have access to customer records are responsible for ensuring that all customer records placed in NCO's trust are maintained completely and accurately, with full confidentiality. NCO employees shall not knowingly submit a false, fraudulent, or fictitious claim for payment or reimbursement.

NCO's Business Conduct and Work Rules policy states that violations of federal, state or local law will not be tolerated. When such violations occur on the job, relate to work performance, or adversely affect NCO, you will be subject to progressive discipline, up to and including termination.

NCO's Business Conduct and Work Rules policy also states that engaging in any immoral, indecent, or similar conduct during working or non-working hours, whether or not involving NCO or its clients, vendors, or employees, that could potentially result in damage to the reputation of NCO, its clients, or employees will not be tolerated.

On 9/16/03, you were trained, and agreed to abide by NCO's Commercial Service Compliance Policies.

On 5/03/03, you admitted to your manager, that on three occasions (2/11/03, 4/03/03 and 5/12/03), you had falsified a debtor's check information, in the amount of $1,071.00, and submitted the unauthorized checks as payment. In addition, you admitted to submitting false phone payments with information obtained from client records, and to creating/submitting postdated checks that were not authorized by the debtor. This would have benefited you by obtaining an additional settlement of $1,071.

Your actions violate NCO policy, and will not be tolerated.

**Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):**

Termination

**Employee Comments:**


_Michael M. Deppe_   6-4-03                    _Valerie Hue_  6-4-03
Employee Signature                              Manager/Supervisor Signature/Date

                                                _____  6.4.03
Copy – Human Resources        B-157  000112     Human Resources Signature/Date

05/25/2004 11:11 FAX 17184042136          NCO FINANCIAL SYSTEMS

EXHIBIT

8C

# NCO®

## Job Discussion Summary

** PLEASE PRINT **

LAST NAME  GOELIA          FIRST NAME  LINDA          SOCIAL SECURITY NUMBER  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

LOCATION (CITY, STATE)  RAMSEY, NJ          ACQUISITION NAME  JDR          DATE  6  12  03

Nature of Discussion (check one)
☐ Verbal Warning    ☐ Written Warning    ☐ Final Warning    ☒ Termination

Topic of Discussion (check one)
☐ Attendance    ☐ Performance    ☐ Insubordination    ☐ Violation of Co Policy    ☐ Other

Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.)
EMPLOYEE UNAUTHORIZED CHECKS BY PHONE
IN THE AMOUNT OF $1000 AGAINST A
CARDMEMBERS ACCOUNT. THIS IS IN VIOLATION
OF NCO POLICY AND FEDERAL LAW.

Action To Be Taken (results of discussion, follow up, dates of follow up, etc.)
IMMEDIATE TERMINATION

Employee Comments:

_____          _____
Employee Signature                        Manager/Supervisor Signature/Date  6.12.03

Copy – Human Resources                    _____
Copy – Retained by Department Manager     Human Resources Signature/Date

Corporate Employee Relations
Revised 7/02

000113

B-158

05/25/2004 11:12 FAX 17184042136          NCO FINANCIAL SYSTEMS

EXHIBIT

8D

# NCO ®

Job Discussion

Please Print

| Last Name | First Name | Social Security Number |
|---|---|---|
| Nichols | Deidre | 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 |

| Location (City, State) | Date |
|---|---|
| Baltimore, MD | July 29, 2003 |

**Nature of Discussion (check one):**
☐ Verbal Warning   ☐ Written Warning   ☐ Final Warning   ☒ Termination

**Topic of Discussion (check applicable area(s)):**
☐ Attendance   ☒ Fraud   ☐ Insubordination   ☒ Performance

**Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):**

NCO policy states that employees who have access to customer records are responsible for ensuring that all customer records placed in NCO's trust are maintained completely and accurately, with full confidentiality. All employees are expected to perform their daily responsibilities in an honest, ethical, and professional manner. NCO employees are required to maintain the privacy and confidentiality of sensitive personal data placed in our trust by a client, including data in our possession that we may have access to, and an individual's financial, medical or employment data.

NCO policy also states that engaging in any immoral, indecent, or similar conduct during working or nonworking hours, whether or not involving NCO or its clients, vendors, or employees, that could potentially result in damage to the reputation of NCO, its clients, or employees is grounds for discipline, up to and including termination.

As an employee of NCO, good customer service and meeting performance requirements are essential to properly service our clients. NCO policy states that falsification of company records including but not limited to the misrepresentation or omission of pertinent facts in client or debtor records, phone activity reports, time cards, medical forms, claim or benefits, employment applications or other documents will lead to progressive discipline, up to and including termination.

On July 14, 2003, it was discovered by management that you received 21 returned checks, within a two-week period.

On July 28, 2003, you were suspended while Corporate Employee Relations conducted a fact-finding investigation.

It has been determined that you processed the checks without the consent or authorization of the debtors. In addition, you failed to properly notate the accounts to reflect your activity when working on these accounts. As a result of your actions, you would have benefited by generating additional revenue, which would have enabled you to achieve your goal.

Your actions violate NCO policy and will not be tolerated.

**Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):**

Termination

**Employee Comments:**

Termed via telephone

_____
Employee Signature

_____
Manager/Supervisor Signature/Date
7/29/03

B-159 000114

Copy – Human Resources
Retained by Department Manager

_____
Human Resources Signature/Date

06/25/2004 11:11 FAX 17164042136          NCO FINANCIAL SYSTEMS

10/17/2003 07 16 FAX 503 526 9187          NCO FINANCIAL SYSTEMS          ☒002

EXHIBIT

8E

## NCO®

### Job Discussion Summary Form
Please Print or Type

| Last Name | First Name | Social Security Number |
|---|---|---|
| Frank | Michael | 40B-82-8160 |

| Location (City, State) | | Date |
|---|---|---|
| Beaverton, OR | | 10/16/03 |

Nature of Discussion (check one):
☐ Verbal Warning    ☐ Written Warning    ☐ Final Warning    ☒ Termination

Topic of Discussion (check applicable area(s)):
☐ Attendance    ☐ Performance    ☐ Insubordination    ☒ Violation of Co Policy Equal

Written Summary (use a separate sheet if necessary, include dates, times, who, what, when, why, etc):

NCO policy states that falsification of Company records, including but not limited to the misrepresentation or omission of pertinent facts in client or debtor records, phone activity reports, time cards, medical forms, claim or benefits, employment applications or other documents are ground for immediate dismissal.

NCO policy also states that employees who have access to customer records are responsible for ensuring that all customer records placed in NCO's that are maintained completely and accurately, with full confidentiality. NCO employees shall not knowingly submit a false, fraudulent, or fictitious claim for payment or reimbursement

On 10/14/03, Corporate Compliance received a complaint that you processed a direct-check payment for a debtor in an amount unauthorized by the debtor. You were suspended without pay while this matter was looked into

On 10/16/03, it has been determined, after conducting a fact-finding investigation, that you violated NCO policy by processing a direct-check payment in the amount of $7,100, when the debtor authorized a payment of $6,000

Your actions violate NCO policy and will not be tolerated.

Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):

Termination

Employee Comments:

re-terminated by phone-10/16/01 @ 3:45p.m.
witnessed on call/Sharon Roussel-John Pelton

Employee Signature

_____
Manager/Supervisor Signature/Date          10/16/03

_____
Human Resources Signature/Date

Copy – Human Resources
Copy – Retained by Department Manager
Corporate Employee Relations

B-160

000115

EXHIBIT

8F

06/25/2004 11:11 FAX 17164042136    NCO FINANCIAL SYSTEMS    ☑005

01/10/2004 10 13 FAX 413 250 6830    ...d FINANCIAL SYSTEMS    @0012/001

# NCO°

## Voluntary Resignation Form
### Please Print or Type

Last Name     Betancourt        First Name    Gabriel        Social Security Number   087 64 9036

Location (City, State)    Tampa, FL

I voluntarily resign my employment with NCO Financial Systems, Inc effective _____ for the following reason

Employee assumed over the phone to his supervisor
October decrease. He has left the office at about
three and has failed to return.

Forwarding Address   6602 Sheldon Rd
                     #1308
                     Tampa, FL  33615

_____
Manager/Supervisor Name

_____
Manager/Supervisor Signature

1/10/04
Date

N/A
_____
Employee Signature

_____
Date

08/25/2004 11:12 FAX 17164042138          NCO FINANCIAL SYSTEMS

EXHIBIT

8G

# NCO®

Job Discuss[ion]

Please Print or Type

| Last Name | First Name | Social Security Number |
|---|---|---|
| Smith | Doug | |

**Location (City, State)**
Getzville, New York

**Date**
1-22-04

**Nature of Discussion (check one):**
☐ Verbal Warning   ☐ Written Warning   ☐ Final Warning   ☒ Termination

**Topic of Discussion (check applicable area(s)):**
☐ Attendance   ☐ Performance   ☐ Insubordination   ☒ Violation of Co. Policy

**Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):**

As an employee of NCO, meeting performance expectations is a requirement of your position.

On several occasions and most recently in December, 2003 you were trained on the company's NSF Policy & Procedures (See Attached). The discussions provided you with details on the regulations that all employees must adhere to.

On January 20, 2004 it brought to management's attention and has been determined that you violated Company policy, and acted in an unprofessional manner by violating NCO's check procedures.

You were suspended on the evening of 1/21/04 after your shift with pay through 1/22/04.

Your actions violate NCO policy, call to question your ability to adequately perform the tasks assigned to you, and will no[t] be tolerated.

**Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):**

Termination — *By Telephone by Michelle Johnssins 4:00pm 1/22/04. Employee wants to speak with Human Resources. I then Confirmed Call Rudy on the line c*

*M. Johnss[ins]*
*1/22/0[4]*

**Employee Comments:**

*[Manager signature]* 1/22/04
**Manager/Supervisor Signature/Date**

*Michelle Johnssins* 1/[22]
**Human Resources Signature/Date**

**Employee Signature**

B-162   000117

08/25/2004 11:12 FAX 17164042136          NCO FINANCIAL SYSTEMS          ⌐010
05/10/:    _____D FAX  5143552930          NCO FINANCIAL SYSTEMS                  2



**NCO**®                                                Job Discussion Su____rm

Please Print or Type

Last Name                          First Name                    Social Insurance Number
Kobir                              Shazad

Location (City, State)                                          Date
Montreal, QC                                                   May 10, 2004

**Nature of Discussion (check one):**
☐ Verbal Warning    ☐ Written Warning    ☐ Final Warning    ☒ Termination

**Topic of Discussion (check applicable area(s)):**
☐ Attendance    ☐ Performance    ☐ Insubordination    ☒ Other: <u>Falsification of Company Records</u>

**Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):**
NCO policy states that falsification of company records including, but not limited to, the misrepresentation or omission of pertinent facts in client or debtor records, phone activity reports, time cards, medical forms, claim or benefits, employment applications or other documents will lead to immediate dismissal.

Mr. Kobir was terminated for processing unauthorized cheques that were located through internal investigation by Capital One.

**Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):**
Termination

**Employee Comments:**
*EMPLOYEE UNAVAILABLE FOR SIGNATURE.*

Employee Signature                                    Manager/Supervisor Signature/Date

Copy – Human Resources
Copy – Retained by Department Manager                 Human Resources Signature/Date

B-163                                                 009119

EXHIBIT

8 T

# NCO®

## Job Discussion Summary

**"" PLEASE PRINT OR TYPE ""**

| LAST NAME | FIRST NAME | SOCIAL SECURITY NUMBER |
|---|---|---|
| Thomas | Samone | 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 |

| LOCATION (CITY, STATE) | ACQUISITION NAME | DATE |
|---|---|---|
| Dover, DE | MMI | 10/23/02 |

Nature of Discussion (check one):
☐ Verbal Warning    ☐ Written Warning    ☐ Final Warning    ☒ Termination

Topic of Discussion (check one):
☐ Attendance    ☐ Performance    ☒ Violation of Co Policy    ☒ Other (Commercial Colls or Practice — Compliance Videos)

Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):

NCO prohibits improper collection activity. Commercial collectors are expected to use appropriate collection techniques and activities and to know which activities are not permitted, based upon their training. Improper collection activities include harassment, acts of misrepresentation, or unprofessional behavior. On October 25, 2002 you received a compliance violation for threatening legal action. This was your ninth violation and a termination violation.

Action To Be Taken (results of discussion, follow up, dates of follow-up, etc.):

Termination

Employee Comments:

_____

_____

_____

_____

Employee Signature: *Employee refused to sign*

Copy – Human Resources
Copy – Retained by Department Manager

_____   10/23/02
Manager/Supervisor Signature/Date

_____   10/24/02
Human Resources Signature/Date

Corporate Employee Relations
Revised 7/02

B-164

000119

EXHIBIT

8J

# NCO®

## Job Discussion Summary Form

Please Print or Type

| Last Name | First Name | Social Security Number |
|---|---|---|
| Wilson | Michael | 248.43.8835 |

| Location (City, State) | Date |
|---|---|
| Atlanta, GA | 10.14.03 |

**Nature of Discussion (check one):**
☐ Verbal Warning  ☐ Written Warning  ☐ Final Warning  ☒ Termination

**Topic of Discussion (check applicable area(s)):**
☐ Attendance  ☐ Performance  ☐ Insubordination  ☒ Violation of Co Policy: Fraud

**Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):**

NCO policy states that employees who have access to customer records are responsible for ensuring that all customer records placed in NCO's trust are maintained completely and accurately, with full confidentiality. All employees are expected to perform their daily responsibilities in an honest, ethical, and professional manner. NCO employees are required to maintain the privacy and confidentiality of sensitive personal data placed in our trust by a client, including data in our possession that we may have access to, and an individual's financial, medical or employment data. Failure to comply with this policy will result in immediate termination.

On October 6, 2003, Corporate Compliance received a complaint that you processed a direct-check payment for a debtor without authorization from the debtor.

On October 14, 2003, it has been determined, after conducting a fact-finding investigation, that you violated NCO policy by processing a direct-check payment in the amount of $19,947.45 without authorization or permission from the debtor.

Your actions violate NCO policy and will not be tolerated.

**Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):**

Termination

**Employee Comments:**

I violated NO Company Policies. This is unfair an unwarrented.

Michael Wilson    10-15-03
**Employee Signature**

Mba McKenzie    10/14/2003
**Manager/Supervisor Signature/Date**

Copy – Human Resources
Copy – Retained by Department Manager

000120

Human Resources Signature/Date

# NCO®

## Job Discussion Summary

EXHIBIT
9

** PLEASE PRINT OR TYPE **

LAST NAME
| Savage

FIRST NAME
William

SOCIAL SECURITY NUMBER
| 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

LOCATION (CITY, STATE)
| Dover, Delaware

ACQUISITION NAME

| October 11, 2001

Nature of Discussion (check one):
Verbal Warning　　　Written Warning　　　Final Warning　　　☒ Termination

Topic of Discussion (check one):
Attendance　　Performance　　☒ Violation of Co Policy - Harassment & Unprofessional Conduct/Workplace Behavior

Written Summary (use separate sheet if necessary, include dates, times, who, what, when, why, etc.):

Management was recently informed of your offensive and harassing behavior in the workplace relating to sexist remarks, racism, and offensive comments to employees.  As a member of NCO Management, you are required to promote a positive work environment, free from discrimination and harassment.  NCO policy clearly states that physical violence, threats, intimidation or harassment of another associate including but not limited to racial harassment will result in immediate dismissal.  A fact-finding was conducted and found these allegations to be true.  There are several witnesses our unprofessional conduct.

Consistent feedback is that your management style is witnessed as unprofessional conduct to include but not limited to use of offensive language and/or behavior that causes disruption in the work setting.  This type of behavior has created an offensive environment that constitutes racial and sexual harassment in the workplace.  The behaviors you display question your ability to adequately perform the tasks assigned to you, and will not be tolerated.

Action To Be Taken (results of discussion, follow up, dates of follow up, etc.):

Due to the violation of NCO's EEO and Harassment and Unprofessional Conduct policies, your employment is terminated effective immediately.

Employee Comments:

_____

_____

_____

_____

_____

Employee Signature (Your signature does not indicate agreement, only receipt of discussion.)

Manager/Supervisor Signature/Date

cc – Human Resources

EmpRelat/JobDiscussionSummaryForm.doc edited 3/00

000121

B-166

01/22/2004 16:03 FAX 3027354891          NCO Group                          ☒002

To: Ted Fox
    Kathy Obenshain

Date: January 22, 2004

You have asked me to explain to you the incidents that occurred to ward the end of the month of December 2003. I was given a directive by Valerie Hue, to acquire a list of all NSF checks to review with the large & super mid collectors. I was to advise her of how much net fee was available in non-sufficient funds checks. I was then instructed to review with each individual collector the status of their non-sufficient funds checks, for the purpose of locating additional fees we could add on to the end of the month figures.

After reviewing with each collector, I was instructed by Valerie Hue to inform the collectors to re-input the checks into the system. Normally she would have handled this herself, which she has done in the passed months with Large Balance, but she was out of the office and this fell upon me to do. This practice was, as I found out from reviewing with each collector, was the norm, they were just surprised that "I" was doing this, since she normally handled it herself. Each collector I spoke with in Large Balance seemed to know the end of the month routine.

In reviewing the checks with the collectors, there were some judgments made for some of the checks not to run do to stop payments, and/or too many NSFs in some cases. I myself did not allow those to run. I gave Michael Scher, a list of these checks that were entered and not entered into the system, but I did keep a record. You ask me what happened at the end of December, this practice has been going on for as long as I can remember, even as a collector, from passed managers, I went through the same routine, and was instructed to put on checks the same way.

In addition, I have had collectors complain to me, regarding check they desired to pull because they were insufficient, but were unable to, because they had been told by Valerie Hue they could not pull them. This was even prior to checks being printed. I can only go on the direction of my manager, as she was my superior.

Sincerely,

Eric Shaw

ES:jlb

DEPOSITION
EXHIBIT
Marlow-3
Reavis 3-8-06

EXHIBIT
Shaw 1
Case 21.106

B-167

000093

01/22/2004 16:51 FAX 3027351535    NCO ACCOUNTING    ☒002

January 22, 2004

To:    Ted Fox
Cc:    Kathy Obenshain

Per our conversation about policy & procedure, the directive that we were given by our manager (Valerie Hue) about NSF checks is as follows.

On a monthly basis we were given the directive to run checks that we knew were not going to clear the bank. We were directed to pull cash journals and put the checks back on that were from the previous months. Then we pulled each collector in one by one and discussed the checks that were to be run and the level of comfort of them clearing. One some occasions even the checks that the collectors stated that would not clear or verify would still be run by directive of Valerie Hue. Especially if we were relatively close to hitting our EOM number given to corporate.

I know for a fact that collectors have asked for some checks to be pulled at the end of the month because they knew that they would not clear. She (Val) stated that she had a directive from Kathy Obenshain that "we are not pulling any checks off the system and to make this happen". Collectors have complained several times about having to put on bad checks at the end of the month that they knew would not clear and would put them at a negative at the beginning of the following month.

Last month before Valerie left for vacation she gave the directive to Eric Shaw (Mid Balance Manager) and handed him all the cash journals of the collectors that she found multiple NSF's on and told him to "GET THEM ALL ON". I know this because we were in our morning managers meeting and she had also given me administrative directives in her absence, which did not have anything to do with the above.

Sincerely,

Kimberley Marlow

DEPOSITION
EXHIBIT

Marlow-3

PENGAD 800-631-6989

3-3-06

B-168

000096

01/21/2004 15:46 FAX



# NCO

### NCO Financial Systems, Inc.
Commercial Services Division
802 Silver Lake Blvd.
Dover, DE  19904
(302) 735-4891, 800-733-1007 (Voice)
(302) 735-1835 (Fax)
sales.dover@ncogroup.com

# Fax

| To: | Kathy Obenshain | From: | Dave McQuisten |
|---|---|---|---|
| **Fax:** | | **Date:** | 1/21/04 |
| **Phone:** | | **Pages** | 2, including cover |
| **Re:** | See attached | | |

☐ **Urgent**   ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**



B-169

000033

*The information contained in this facsimile message is privileged and confidential. The information is intended for the use of the recipient named above only. If the reader of this is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone and return the original message to us at the above address via the U.S. Postal Service.*

01/21/2004 15:47 FAX

NCO Financial Systems, Inc.
Commercial Services



Kathy Obenshain,

Per your request, the following is a summary of the phone conversation this morning with Ted Fox.

In conversations with debtors requesting a check not be deposited, have resulted in the check not being 'pulled', per manager direction.

Checks that have been returned NSF, have been directed to be 'put back on'. Attempts to contact the debtor have and have not happened.

We, as a group, have at times been told 'no checks are being pulled', which led to no attempt to pull or change check dates, knowing they would possibly be returned. HOLD check request or deletions have gone unsigned in some cases.

This has been a 'semi' practice for some time, and I only have started notating the accounts in my que, the last few months.

B-170

000030

NCO Financial Systems, Inc.

05/24/2004 14:55 FAX 3027471031    NCO FINANCIAL SYSTEMS

EXHIBIT

1611

State of Delaware
County of Kent

## SWORN STATEMENT OF MIKE SCHER

I, Mike Scher, hereby confirm under oath the following:

1. I am employed by NCO Financial Systems, Inc. (NCO) and have worked at NCO since ___June 1992___. I am currently a ___General Manager___ in the Commercial Division in Dover, Delaware.

2. At no time did Kathy Obenshain, former vice president of operations for the Commercial Division, instruct me to re-deposit checks without verification of funds. Such conduct is a known violation of NCO check handling policies.

3. At no time did I witness Ms. Obenshain instruct Valerie Hue to re-deposit checks without verification of funds.

4. It has always been NCO's policy and direction that unless there was verification of funds available, no non-sufficient funds (NSF) checks should be re-deposited.

5. It is known that fraudulently violating NCO's check handling policies would result in termination.

6. I have provided this sworn statement of my own free will and the information contained in this statement is accurate to the best of my knowledge and belief.

_____    6/24/04
Mike Scher                 Date

H:\DINCO RX FILES\Hue, Valerie\Correspondence\Sworn Statement Scher.doc

DEPOSITION
EXHIBIT
Scher-2
___ 3-23-06

B-171

000103

01/21/2004 16:08 FAX

EXHIBIT

3e



# NCO ®

*NCO Financial Systems, Inc.*
Commercial Services Division
802 Silver Lake Blvd.
Dover, DE  19904
(302) 735-4691, 800-788-1007  (Voice)
(302) 735-1835  (Fax)
sales.dover@ncogroup.com

# Fax

| | | | |
|---|---|---|---|
| **To:** | Kathy Obenshain | **From:** | Brad Reavis |
| **Fax:** | 504-837-5230 | **Date:** | 1/21/04 |
| **Phone:** | | **Pages** | 2, including cover |
| **Re:** | See attached | | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

EXHIBIT

Reavis 1
CCC- 2/1/06

B-172

000093

*The information contained in this facsimile message is privileged and confidential. The information is intended for the use of the recipient named above only. If the reader of this is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in*

01/21/2004 16:08 FAX                                                                    002/002

I SPOKE TO TED AND KATHY AND
ADVISED BOTH OF THEM THAT WE WERE
ENCOURAGED BY OUR MANAGER TO LOOK AT
OUR NSF's THAT BOUNCED DURING THE MON
TO REDEPOSIT AT 20GM AND IN ONE CASE
RECREATE FOR BLIND FEE.

B-173

AFFIDAVIT OF CHERIE A. SUGG
PAGE 1

STATE OF NEW YORK
COUNTY OF ERIE

## AFFIDAVIT OF CHERIE A. SUGG

BEFORE me the undersigned authority, personally came and appeared Cherie A. Sugg, who after being duly sworn did state:

1. I am the Senior Vice-President of Human Resources for NCO Financial Systems, Inc. During January 2004, I was the Vice President of Human Resources.

2. As the VP of HR for NCO, I oversaw various HR functions, including the direction of the employee relations responsibility.

3. NCO maintains a work environment that prohibits discrimination on the basis of all protected classifications, including race, sex and retaliation.

4. NCO's policy is published in the handbook and posted in all offices. NCO employees may complain, or report any discrimination issue to their supervisor, any member of management, to corporate HR via an 800-call-in number, or anonymously through an 800-call-in line. Reports are accepted with a guarantee that there will be no retaliation.

5. I have checked NCO's HR records and at no time did Ms. Hue ever complain regarding any discrimination issues in the Dover office. I have learned that in October 2001, she submitted a statement regarding Bill Savage's improper conduct.

6. At my direction, Ms. Carol Murray, a senior employee relations specialist assisted in the investigation of Ms. Valerie Hue, the former General Collections Manager for the Commercial Division Dover, Delaware office.

7. Along with Ms. Murray, I provided support to the then Commercial Division Vice President of Collections, Ms. Kathy Obenshain regarding the Hue investigation. Ms. Obenshain was Ms. Hue's direct supervisor.

8. Based upon information that was learned during this investigation, Ms. Hue was found to have instructed collections personnel, administrative personnel and 2 managers to violate Commercial Division check handling policies.

9. Ms. Obenshain and the newly appointed Commercial Division Senior Vice President, Mr. Ted Fox, secured statements confirming Ms. Hue's improper conduct.

10. Ms. Murray and I ensured that a full, fair and impartial investigation was completed. My staff also assisted with answering the later filed discrimination charge filed by Ms. Hue.

11. We never uncovered any type of discrimination or retaliation regarding Ms. Hue's discharge. To the contrary, all Dover employees reported the same type of wrongdoing by Ms. Hue and all similarly situated managers

B-174

AFFIDAVIT OF CHERIE A. SUGG
PAGE 2

to Ms. Hue in other Commercial Division offices confirmed that the check handling procedures were uniformly applied.

12. I participated in the telephone call with Ms. Hue, confirming that she was terminated. During this call, Ms. Hue stated that Ms. Obenshain was instructing her to violate NCO's check handling policies and that Ms. Hue knew she was wrong when she did violate the policies.

Cherie A. Sugg

SWORN TO AND SUBSCRIBED
BEFORE ME, THIS 3rd DAY OF
APRIL, 2006.

NOTARY- MY NOTARY IS UNTIL:_____

TRACEY A. ___
Notary Public, State of New York
Qualified in Erie County
My Commission Expires ____ 1/23/07

B-175